Thomas C. Dickson, Administrator of the Estate of William O. Dickson, Deceased, Appellee, v. Great American Casualty Company and Pacific States Life Insurance Company, Defendants. Pacific States Life Insurance Company, Appellant.

Gen. No. 36,187.

Opinion filed February 21, 1933.

E. R. ELLIOTT, for appellant.

MORAN, NELTNOR & SCOLNIK, for appellee; SILAS A. CANADA, of counsel.

Mr. Justice Gridley delivered the opinion of the court.

In an action in assumpsit, based upon a policy of accident insurance, issued by the Great American Casualty Co. (hereinafter called the Casualty Co.) on August 31, 1929, and reinsured by the Pacific States Life Insurance Co. (hereinafter called the Pacific Co.) by virtue of a written agreement between it and the Casualty Co., dated October 19, 1929, there was a trial without a jury on June 8, 1932, resulting in a finding and judgment for $1,000 against both defendants. The case was tried upon a stipulation of facts, "*except* upon the issue as to just how the deceased came to his death,*" and, as to the details of his death, plaintiff introduced the testimony (by depositions) of four witnesses. No evidence was introduced by either defendant. From the judgment the Pacific Co. alone prosecutes the present appeal.

To plaintiff's amended declaration, filed June 5, 1931, a copy of the policy and a copy of the reinsurance agreement were attached as exhibits and made parts of the declaration. And plaintiff therein alleged in substance that the policy was issued to William O. Dickson during his lifetime on August 31, 1929; that by the terms thereof the Casualty Co. insured him by the name of Ordie Dickson (hereinafter called the insured) against the loss of his life "by the wrecking or disablement of any private horse-drawn vehicle or private automobile in which the insured is riding or driving," and agreed to pay the sum of $1,000 to Olive C. Dickson (wife of the insured and named in the policy as beneficiary) in case said insured lost his life in that manner and in case she survived him, but that if she did not survive him then said sum should be paid to his estate; that on September 29, 1929, when the policy was in force and effect, the insured came to his death, "while he was riding in and driving his automobile along a public highway . . . near Farmland, Randolph

County, Indiana, by his automobile becoming so wrecked and crushed and demolished as to cause his immediate death''; that his wife (hereinafter called Mrs. Dickson) ''came to her death on the same day . . . in the same manner as the insured and at the same time''; that the Casualty Co. was notified of the insured's death, and thereafter and within apt time proofs of death were made to it at its Chicago office by plaintiff, as administrator of the insured's estate; that on October 19, 1929 (less than a month *after* the insured's death), the Pacific Co., under its then corporate name of Mountain States Life Insurance Co., entered into an agreement in writing, with the Casualty Co., ''whereby it agreed to accept all of the outstanding liabilities on all the various policies and contracts of accident and health insurance of said Casualty Co. which had been issued by it, and did assume all liability of every kind and character of said Casualty Co. under, pursuant to and arising out of said accident and health policies so issued, as aforesaid, by the Casualty Co., whether then existing or subsequently to arise''; that on July 1, 1930, the Pacific Co. (while still doing business under the name of the Mountain, etc. Co.) filed with the secretary of state of Colorado an amendment to its original articles of incorporation, changing its name to the Pacific Co., and did afterwards, during July, 1930, file with the superintendent of insurance of Illinois a certified and authenticated copy of said amendment; that on October 4, 1929, plaintiff was duly appointed administrator of the estate of the insured (copy of letters of administration attached) ; and that ''the Casualty Co., by the issuing of said policy, and the Pacific Co., by reason of its agreement with the Casualty Co., have both become liable to pay to plaintiff the sum of $1,000, but that, nevertheless, said defendants, although often requested, have not paid to plaintiff the said sum or any part thereof and refuse so to do,'' to plaintiff's damage, etc.

To the declaration each defendant filed a plea of the general issue, and three special pleas, one of which denied that defendants were *jointly* liable to plaintiff. The Pacific Co. filed three other special pleas which, because of the stipulation of facts made and filed prior to the trial, it is not necessary to set forth.

In the stipulation the parties agreed in substance that, as charged in the declaration, the Casualty Co. issued the policy to the insured on August 31, 1929, that the insured and his wife "met their death in a common disaster" while in an automobile on the mentioned highway in Indiana on September 29, 1929, that notice and proofs of death of the insured were given to the Casualty Co. within the required times, that plaintiff is the duly appointed administrator of the insured's estate, that the Pacific Co. (under the name of the Mountain, etc. Co.) entered into the reinsurance agreement with the Casualty Co. on October 19, 1929, and that during July, 1930, the change of name was duly made by amendment and a copy of the amendment duly filed with the superintendent of insurance of Illinois. A copy of the policy and a copy of the reinsurance agreement were attached to the stipulation and made parts thereof.

After the stipulation had been filed and before the trial, the Pacific Co. by leave of court, filed two additional special pleas to plaintiff's declaration, in substance as follows:

No. 8: That said reinsurance agreement between it and the Casualty Co. "was prepared and executed in accordance with the statutes of Illinois, was submitted to the Director of the Department of Trade and Commerce for his approval, and was by him approved on October 29, 1930;" that under said statutes the agreement "could not and did not take effect until approved by said Director;" that the agreement "was not in force on the date the insured came to his death and did not take effect until long after his death"; and that be-

cause of the foregoing the Pacific Co. "is not liable to plaintiff, or to any other person, because of said policy and said agreement."

No. 9: That said reinsurance agreement "is in law a contract of *indemnity*, and does not authorize plaintiff, who is not a party to said contract, to maintain any action thereunder against this defendant."

On the trial plaintiff introduced the stipulation, the policy and the reinsurance agreement, and read the depositions (taken at Winchester, Indiana) of the four witnesses as to the happening of the unusual accident which caused the insured's death. Plaintiff then rested and the court, upon defendants electing not to introduce any evidence, found the issues in plaintiff's favor, assessed his damages at $1,000, and, after overruling motions for a new trial and in arrest of judgment, entered judgment against both defendants in that sum.

In the policy, dated August 31, 1929, the Casualty Co. insured said Dickson for the term of one year "against death or disability resulting directly and independently of all other causes from bodily injury sustained through external, violent and accidental means, subject to the limitations and conditions herein contained." Then follows a table of indemnities in which is the statement "For loss of life, $1,000, . . . provided such loss shall result, within thirty days from date of accident, from accidental bodily injuries, solely and independently of all other causes, and only if such injuries are sustained as follows:" Then are stated in four sections various types of accidents, and in section 1, is the statement "*by* the wrecking or disablement of any private horse-drawn vehicle or private automobile in which the Insured is riding or driving, . . . ."

In the reinsurance agreement, dated October 19, 1929, and duly executed by the Casualty Co. (an Illinois corporation with principal office in Chicago) and

the Mountain etc. Co. (a Colorado corporation with home office in Denver and executive office in Hollywood, California) is the paragraph:

"Whereas the Mountain etc. Co. is desirous of reinsuring the accident and health business of the Casualty Co. and . . . has *agreed to accept all of the outstanding policy liability on all of the various policies* and contracts of accident and health insurance in said Casualty Co., and *assume all liability* of every kind and character of said Casualty Co. under, pursuant to or arising out of *any of said accident and health policies* whether *now existing or to arise."*

In Articles II and III of the agreement it is provided:

"The said Mountain etc. Co. agrees to take into its own accounts *all policies* and contracts of accident insurance . . . now outstanding and in force, . . . and to *adjust, settle or pay all claims arising thereunder,* as well as any and all claims *now existing,* as fully as the said Casualty Co. might or should have done, and all this to do to the complete exoneration of said Casualty Co. from loss or expense on account of all such policies and contracts of accident insurance, . . . whether now existing or heretofore issued, and *whether such claims shall now be pending or may hereafter arise."* . . .

"Upon execution of this agreement, *and its approval by the Director of Trade and Commerce of Illinois,* the Casualty Co. shall immediately deposit with the Mountain etc. Co. . . . the sum of $20,000, representing an initial and partial payment of the entire amount due the Mountain etc. Co. under this contract of reinsurance." . . .

"This agreement shall become and be effective *on the date of the approval* of the Director of Trade and Commerce of Illinois, and the liability hereunder as of 12 o'clock noon, Central Standard Time, October 15, 1929, and shall continue at full force and effect until

the succeeding expiration date thereafter of each and every policy reinsured by the Mountain etc. Co. hereunder.''

On the last page of the agreement and below the signatures of the parties is the statement of approval by said director as follows:

''Approved this 29th day of October, A. D. 1930, at Springfield, Illinois, by the Director of Trade and Commerce of the State of Illinois.

(Signed) Leo H. Lowe,<br>Director.''

From the depositions of the witnesses, three of whom arrived on the scene of the accident shortly after it had happened, the following facts appear: Early on Sunday evening, September 29, 1929, the insured was driving his two-seated Ford automobile northerly on the public country road in Indiana mentioned in the declaration. He was seated on the left (or west) side of the front seat; no one was seated on the back seat; next to him on the front seat sat a Mrs. Reed and next to her Mrs. Dickson. Just east of and near to the highway there was standing a large tree, upon which some workmen had on the previous day been doing some work preparatory to removing it. They had taken away some of the earth around the trunk and had severed some of the roots, and had carelessly left it standing in that condition. On the evening in question a strong wind was blowing. As the insured's automobile came about abreast of it, the tree fell over across the road, and, in falling, crashed through the top of the automobile, striking the three occupants, breaking the back of the seat and pinioning them down inside the car, killing the insured and Mrs. Dickson, and so seriously injuring Mrs. Reed as to render her unconscious for several days. The automobile was otherwise badly wrecked, disabled and damaged. The testimony of the witness who first arrived at the scene of the accident disclosed that upon his first examina-

tion, made before he went away to summon assistance, Mrs. Dickson was dead but that the insured and Mrs. Reed were still living; and that upon his return he found that the insured, before he was taken from the wreck, had also died.

One of the contentions of counsel for the Pacific Co. on this appeal is that the judgment should be reversed because the accident that caused the insured's death "is not such an accident as is covered by the policy," or, as he puts it in other words, "is not one of the perils insured against by the Casualty Co." We find no merit in the contention. While it is probably true, as argued, that the falling of the tree was the proximate cause of the insured's death, it is also true that he met his death *because of* "the wrecking or disablement of a . . . private automobile in which the insured is riding or driving." The construction of the language of the policy, as urged, is a narrow one, and one which courts do not favor. (*Kaplan v. United States Fidelity & Guaranty Co.,* 343 Ill. 44, 48.) In *Niagara Fire Ins. Co. v. Scammon,* 100 Ill. 644, 649, it is said: "Such insurance contracts being signed by the insurer only, and prepared by persons acting in the exclusive interest of the insurance company, the language is that of the insurer, and hence the rule is, that the provisions and conditions of the policy are construed most favorably for the insured." In *Healey v. Mutual Accident Ass'n,* 133 Ill. 556, 561, it is said: "No rule in the interpretation of a policy is more fully established, or more imperative and controlling, than that which declares that in all cases it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity which, in making the insurance, it was his object to secure."

The main contention of counsel is that, even though the Casualty Co. may be held liable under the policy,

the Pacific Co. cannot be held liable under its reinsurance agreement with the Casualty Co. because that agreement is a mere ''contract of indemnity,'' to which the insured was neither a party nor in privity therewith. · In our opinion this contention is also without merit. As we read the agreement it is much more than a ''contract of indemnity,'' or one for reinsurance merely. In its Article II, above set forth, the Pacific Co., by its then corporate name, agreed ''to take into its own accounts all policies and contracts of accident insurance . . . now outstanding and in force, . . . and to adjust, settle *or pay* all claims arising thereunder, as well as any and all claims *now existing,*'' etc. In the leading case in Illinois of *Weil v. Federal Life Ins. Co.*, 264 Ill. 425, where it appears that the Federal Co., by written contract containing somewhat similar provisions, had undertaken to reinsure policies issued by the Inter-State Assurance Co., it is said that the contract ''was more than one of reinsurance,'' and it is further said (p. 433): ''By assuming and guaranteeing the policies, the defendant (Federal Co.) undertook to discharge the obligations of the Inter-State to its policyholders, and under such an agreement the insured may sue the reinsurer.'' This decision is in accord with the general current of authority in this country, as appears from an extensive annotated note in 35 American Law Reports, at page 1349, where it is said that while ''the insured cannot enforce the liability of the reinsurer upon a mere reinsurance contract, for the reason that he is neither a party thereto nor in privity therewith'' (citing among other cases that of *Vial v. Norwich Union Fire Ins. Society*, 257 Ill. 355), yet it is the law (p. 1351) that ''Where, however, the contract of reinsurance is more than a mere contract of indemnity, and is made for the benefit of the policyholders of the reinsured, and assumes the liability of the latter upon its policies, the liability of

the reinsurer may be directly enforced by the insured, or his privies.''

Counsel also contends that plaintiff cannot recover from the Pacific Co. in the present action, because ''the contract of reinsurance was not in effect when plaintiff's cause of action arose.'' The evidence discloses that the insured met his death on September 29, 1929, while the policy issued by the Casualty Co. was in force and effect; that plaintiff was appointed administrator of the insured's estate on October 4, 1929; that the reinsurance agreement was executed on October 29, 1929, but that by its terms it was not to become in force until it was approved by the director of trade and commerce of Illinois; that it was not approved by said director until October 29, 1930, when it became in full force and effect; and that the present suit was commenced by plaintiff *subsequent* to said approval. We find no merit in counsel's contention, especially when consideration is given to Article II of the reinsurance agreement, wherein it is provided that the Pacific Co. (under its then corporate name) ''agrees to take into its own accounts all policies and contracts of accident insurance, . . . now outstanding and in force, . . . and to adjust, settle, *or pay* all claims arising thereunder, as well as *any and all claims now existing.*'' When the reinsurance agreement became in force and effect by said approval of said director, plaintiff's present claim was then *existing* and unsatisfied, and by said agreement the Pacific Co. agreed to pay said claim and save the Casualty Co. harmless therefrom.

Counsel also contends that the judgment against both defendants should be reversed because it does not appear that they are *jointly* liable. In 47 Corpus Juris, p. 68, sec. 142, it is said: ''Persons liable on several and distinct contracts or obligations, although with the same person or set of persons, cannot be joined as defendants in one action at common law, but

each must be sued separately." In *Imperial Hotel Co. v. Claflin Co.,* 175 Ill. 119, it appears that the plaintiff, Claflin Co., sued the defendants, Imperial Hotel Co. and A. C. Mills & Co., *as joint debtors;* that the evidence disclosed that a cause of action existed in favor of Claflin Co. against the Hotel Co., by virtue of a certain contract; that Mills & Co. by another contract assumed the indebtedness of the Hotel Co. to Claflin Co., and that by such assumption a relation was created in favor of Claflin Co. that would have authorized it to recover against Mills & Co.; that the trial court, on the theory that the Hotel Co. and Mills & Co. were *joint* debtors, entered judgment against both the Hotel Co. and Mills & Co. for the full amount of Claflin Co.'s demand. In reversing the judgment and remanding the cause our Supreme Court said (p. 123) : "No liability existed in favor of Claflin Co. against both these defendants *as joint debtors.* In an action *ex contractu* against several it must appear that their contract was *joint,* and that fact must be averred by the pleadings and shown by the proof on the trial, otherwise no recovery can be had." We do not think that these principles of law ought to here be applied under the existing facts. In the present case the theory of plaintiff's right of recovery, as disclosed from the allegations of his amended declaration, was not that the defendants, Casualty Co. and Pacific Co. were *jointly* liable to him, but that *each* defendant was *severally* liable to him for $1,000,—the Casualty Co., because of its primary liability on the policy, and the Pacific Co., because of the provisions of the reinsurance agreement. To the declaration the Pacific Co. did not demur, but filed a plea of the general issue and the special pleas as above mentioned. Subsequently the cause was tried on a stipulation of facts, except as to the issue regarding the particular manner in which the insured met his death, which was disclosed by the

undisputed testimony of plaintiff's witnesses. By the terms of the policy, which was made a part of the stipulation, and by said testimony, it appeared that the Casualty Co. was liable to plaintiff in said sum, and by the terms of the reinsurance agreement it appeared that the Pacific Co. agreed to save the Casualty Co. harmless from its said primary liability, and to make payment to that end. No defense was made on the trial by the Casualty Co. and it is not on this appeal contesting the judgment against it. We regard the contention of counsel of the Pacific Co. as a mere technical one. It is in effect that, although the Pacific Co. is liable to plaintiff in said sum of $1,000, plaintiff can only recover the sum in a suit brought against it as sole defendant. Under the peculiar facts disclosed, and as there has been a trial upon the merits, we are satisfied that justice does not demand that the judgment against both defendants should be reversed, thereby compelling plaintiff to commence a new suit against the Pacific Co., to collect from it a sum for which it has been shown it is clearly liable.

The judgment of the circuit court of June 8, 1932, should be affirmed and it is so ordered.

*Affirmed.*

SCANLAN, P. J., concurs.