HOMESTEADERS LIFE ASSOCIATION, Appellee, v. RAY MURPHY, Commissioner of Insurance, et al., Appellants.

No. 44011.

SEPTEMBER 28, 1937.

John H. Mitchell, Attorney General, Don W. Burington, Asst. Attorney General, and Lehan T. Ryan, for appellants.

Frank H. Dewey and Carr, Cox, Evans & Riley, for appellee.

SAGER, J.—Code section 7025, under which defendants assert the right to levy the tax of which plaintiff complains, reads, in part:

"Every insurance corporation or association of whatever kind or character, organized under the laws of the state of Iowa, not including * * * fraternal beneficiary associations, which * * * are not organized for pecuniary profit, shall, on or before the first day of March of each year, pay to the treasurer of state a sum equivalent to one per cent of the gross receipts from premiums, * * * received during the next year preceding the first day of January last past, * * * ."

Plaintiff asserts that this section does not apply to fraternal beneficiary associations, but that plaintiff's obligations in that regard are fixed by section 8808, which requires the payment of the sum of $25 per year as a fee preliminary to the issuance by the commissioner of a permit authorizing the plaintiff to transact business within the state. Because of a difference of opinion between the parties hereto as to the statute applicable, and the commissioner's insistence that the gross premium tax

be paid before he would issue the certificate, the company finds itself in a position where it may not continue to operate in this state without yielding to the demands of the commissioner. In other words, the effect of the commissioner's view is that the plaintiff must cease doing business or pay the premium tax.

Since the solution of the question before us turns entirely upon statutory provisions, a preliminary survey of the general field of insurance law as contained in the Code will help to point out what we believe to be the correct answer to the question presented. Defendants suggest that this action is premature because brought two or three days before the first of April; but since the commissioner's tax notice and demand of the plaintiff was an implied if not a direct threat to withhold a license, we do not stop to consider this proposition.

Our insurance law is contained within Title XX of the Code. Among its provisions will be found section 8613, which defines the general powers of the commissioner. The various chapters of this title have to do with the different types of insurance being written within the state; and it is to be observed that each class, or type, has its particular provisions for its regulation. It is interesting to note, too, that under none of the various chapters is the commissioner authorized to suspend the business of an insurance company of whatever kind by the method attempted in the case before us. We do not overlook certain provisions of the insurance law having to do with foreign companies, which statutes have no bearing upon the issues before us. By that we do not assert that it is the purpose of the commissioner to suspend the business of the plaintiff until and unless compliance to his demands be yielded, but that such is the effect of his position.

Plaintiff claims that its status or character is fixed and determined by section 8777, which declares:

"A fraternal beneficiary association is hereby declared to be a corporation, * * * formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit, * * * ."

This section contains other provisions which need not now be considered.

Turning to chapter 397, which has to do with the examina-

tion of insurance companies generally, we find section 8625, providing in part as follows:

"The word 'company' as used in this chapter shall mean all companies or associations organized under the provisions of chapters 398, 400, 401, 404, 406, * * *."

It will be noted that chapter 402, which deals with fraternals, is not included.

Pursuing the inquiry suggested above, there will be found in the chapter from which we have just quoted section 8634, under which, if any of the companies referred to shall, among other things, do an illegal or unauthorized business, the commissioner "shall at once report the same to the attorney general, who shall apply to the district court or any judge thereof for the appointment of a receiver to close up the affairs of said company."

In chapter 398, which deals with life insurance companies generally, appears a provision (section 8658) to the effect that if any domestic company fails to comply with the law, the attorney general shall at once apply to the district court of the county where the home office of the company is located for an order requiring the company to show cause why its business should not be discontinued, and upon hearing, if no sufficient cause be shown, the court shall decree a dissolution of the company.

Chapter 400, governing assessment life insurance, provides (section 8712) the method whereby an assessment company not complying with the law shall be made to conform. This section, like the others quoted, directs that the commissioner "shall promptly communicate the fact to the attorney general, who shall at once commence action before the district court of the county in which such association has its principal place of business, giving it reasonable notice thereof."

Following sections provide for the method of disciplining a company which is not complying with the law.

Keeping in mind the definition of "company", as given in section 8625, to which reference has already been had, an examination of chapter 401, applying to all companies within that definition, will show that it contains a provision whereby the commissioner may suspend or revoke the certificate of any such company for failing to comply with the provisions of sections

8737 to 8744, inclusive. These have to do generally with the investment of funds and the securities of such companies.

This brings us to a consideration of that chapter under which plaintiff was organized, to wit, chapter 402. Among the various sections appearing therein will be found section 8791, which reads as follows:

"Such associations shall be governed by this chapter, and shall be exempt from the provisions of the statutes of this state relating to life insurance companies, except as hereinafter provided."

While, by reason of its juxtaposition to section 8790, this would seem to limit the provisions of section 8791 to that type of associations described in section 8790, a reading of section 8791 as originally enacted discloses that it has reference to all fraternal associations dealt with in chapter 402. See sec. 4, ch. 21, Acts of the Twenty-sixth General Assembly. Under this chapter plaintiff has conducted its business for many years, receiving each year its certificate authorizing it to transact business. There have been, so far as the record before us discloses, no complaints against it,—at least, not of sufficient consequence to warrant the withholding of its certificate,—and there is none now, so far as the record herein discloses, other than that it refuses to pay the gross premium tax which it claims, and which we hold, it is not required under the statutes to pay.

**III** There is much discussion in the brief of defendants to the effect that the company has in many ways violated the terms of its charter. It has, it is asserted, issued policies of all kinds the same as any other insurance company might do; it has failed to carry out some of the ritualistic work that once was thought more important in companies of this kind than it seems to be now. We do not take the time to follow the argument of defendants along this line, because every charge made against this plaintiff, except that of its failure to pay the premium tax, may be admitted without changing the result. Chapter 402 of the Code, dealing with fraternal insurance companies, gives to the insurance commissioner no right or power to put one of these companies out of business because of a difference over tax matters, or for any other reason except in the manner provided by sections 8815, 8816, and 8817. Far from authorizing the commissioner to suspend the business of a domestic company,

section 8816 provides that he shall, in the event that any such fraternal "shall exceed its powers, or shall conduct its business fraudulently, or shall fail to comply with any of the provisions of this chapter, give notice in writing to the attorney general, who shall immediately commence an action against such association to enjoin the same from carrying on any business." The power to discipline the company will be seen to be lodged in the courts, acting at the behest of the attorney general when the insurance commissioner shall have called to his attention violations of the statute. It is a strange doctrine, and one to which we decline to subscribe, that an officer of an executive department, in the absence of express statute to that effect, has the power to pronounce a death sentence upon a business of this magnitude (or of any other magnitude, for that matter) by the application of a tax statute which such departmental officer believes to be applicable.

Defendants place much reliance upon their claim that the business of the plaintiff company has been conducted in such a way as to result in a profit, and therefore, they argue that under section 7025 already referred to the plaintiff brings itself within that class of insurance corporations "organized for pecuniary profit". Whether it be the fact or not that plaintiff has made a profit, this does not enter into the correct solution of the questions before us. The term last quoted is descriptive of the class of insurance company coming within the provisions of this section 7025, and no more. If the defendants' claim that every insurance company, fraternal or otherwise, that makes a profit must pay the gross premium tax is correct, a substitution of two words in the language of the section last referred to would have stated that intent. If the legislature had said "every association or company *making a* pecuniary profit", instead of "being *organized for* pecuniary profit", it would have said precisely what the defendants contend for here. Since the words "making a" were not used, we must infer that the legislature did not intend the statute to have the construction which would follow had they been incorporated therein.

We have examined the authorities cited by defendants and find none which requires a construction of the statutes different from that here announced. The case upon which much reliance is placed, Readlyn Hospital v. Hoth, 223 Iowa 341, 272 N. W. 90, will be found upon examination to deal entirely with the

question as to whether certain property should bear a tax, and has nothing to do with the question whether a corporation had or had not a certain status.

On the whole record we find that the decree of the trial court was right, and it should be and is affirmed.—Affirmed.

All Justices concur.