IOWA MUTUAL TORNADO INSURANCE ASSOCIATION, appellant, v. WILLIAM E. TIMMONS, commissioner of insurance, and FARMERS MUTUAL REINSURANCE COMPANY, appellees.

No. 50027.

(Reported in 105 N.W.2d 209)

164

SEPTEMBER 20, 1960.

REHEARING DENIED NOVEMBER 18, 1960.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellant.

Norman A. Erbe, Attorney General, and Leonard C. Abels, Assistant Attorney General, for appellee William E. Timmons.

Tomasek & Vogel, of Grinnell, and Duncan, Jones, Hughes, Riley & Davis, of Des Moines, for appellee Farmers Mutual Reinsurance Company.

LARSON, C. J.—Although a number of questions were raised by the defendants' motion to dismiss, the three principal issues involved are, whether the state commissioner of insurance has discretion to determine when and under what circumstances a two per cent tax provided in chapter 432 of the Code must be paid to the state treasurer, whether plaintiff is a proper party to prosecute this action of mandamus to compel payment of the tax, and whether plaintiff alleges facts which if proven would constitute the insurance coverage involved direct insurance and not "reinsurance" as contemplated by our statutes. The trial court decided the first question in the affirmative, and by refusing to dismiss on the second ground apparently decided it in favor of plaintiff. It did not directly pass upon the third proposition. We disagree with the court on the first issue, agree with it on the second, and hold that under the agreement the insurance involved is not "reinsurance."

Plaintiff's action was commenced after the commissioner refused its request that the Farmers Mutual Reinsurance Company, hereinafter referred to as the Farmers Mutual, be required to pay a two per cent premium tax upon certain business done in Iowa, which it contended was direct insurance and not reinsurance exempt from such tax. Sections 432.1 and 515.24, Code of Iowa, 1958.

Plaintiff's petition alleged that defendant insurance company conducts an insurance operation in Iowa in conjunction with various county mutual assessment associations writing windstorm insurance; that the Farmers Mutual enters into written contracts, terminable by either party on 90 days notice, with county mutuals with which it expects to write windstorm insurance; that these contracts require the county mutual to cede to the Farmers Mutual all of its windstorm liability, and the company agrees automatically to reinsure these risks for the county mutual one hundred per cent immediately upon the issuance of such policies; that the Farmers Mutual collects

from the county mutual a premium of $1.20 per $1000 of insurance, and that the county mutual collects from the insured $1.50 per $1000 of insurance per year, and retains the difference for its expenses including agents' commissions; that the county mutual issues its own five-year policy and, while it does not mention the Farmers Mutual nor reinsurance, the policy form is to be furnished by the Farmers Mutual and its use is required, together with a requirement that the windstorm policy be written in the same amount as fire insurance on the same property, and that it prohibit certain coverages and limit or restrict coverage on others; and that the Farmers Mutual disclaims all liability on forms other than those supplied by it and provides for periodic inspections by it of all risks.

It further was alleged that under the agreement the Farmers Mutual reserved the right to settle and adjust windstorm claims; that claims made to the county mutuals were to be referred to the Farmers Mutual, whose adjusters, appointed in co-operation with the county mutuals, but trained and paid by the Farmers Mutual, were to adjust and pay all losses by drafts on the Farmers Mutual kept in local mutual offices for that purpose; that no settlement or adjustment could be made except in that manner; and that the county mutuals paid nothing toward the losses.

This, we think, is sufficient to disclose the alleged operation which plaintiff claimed constituted direct insurance business, and which the Farmers Mutual claimed entitled it to exemption from the tax as bona fide "reinsurance." The original complaint to the commissioner also involved some arrangment by defendant insurance company to pay county mutual personnel commissions for reference of such business and payment to them of fees as adjusters, etc., which practice it was claimed fell into the category of unfair or illegal practice.

Although no hearings were set by the commissioner of insurance as provided in chapter 507B, he did conduct an investigation, and on June 19, 1958, issued a ruling which required the discontinuance of the practices of paying commissions to county mutual officers and agents for business ceded or for adjusting, the request for compulsory action by him to require

payment by the Farmers Mutual of the two per cent premium tax on this insurance business was rejected. In this decision he stated he did not feel it was his duty to declare a tax due "in the eyes of the law", and decided that on its face the transaction amounted to "reinsurance" such as to exempt the Farmers Mutual from the tax under section 432.1, Code of 1958. This ruling was reaffirmed later and plaintiff's action followed.

In its amendment filed subsequent to the first dismissal, plaintiff alleged this reaffirmance amounted to an abuse of discretion and was arbitrary, capricious and illegal. It was unsuccessful in obtaining a change in the court's decision, but in view of our holding on the other questions this charge is not of importance here.

I. Under the well-known and firmly-established rule, for the purpose of this decision all well-pleaded allegations must be taken as true. The first question to be resolved is whether the commissioner has the authority under such circumstances to determine the tax liability of the defendant insurance company.

Chapter 432, Code of 1958, is entitled by the Code editor "Insurance Companies Taxation", and section 432.1 provides: "Every insurance company * * * not including fraternal beneficiary associations, county mutual associations * * * shall, at the time of making the annual statement as required by law, pay to the treasurer of state as taxes, an amount equal to the following: * * * 2. Two percent of gross amount of premiums * * * received during the preceding calendar year by every company * * * on contracts of insurance other than life for business done in this state * * *."

Section 432.3 provides: "At the time of paying said taxes, said companies and associations shall take duplicate receipts therefor, one of which shall be filed with the commissioner of insurance, and upon filing of said receipt, *and not till then*, the commissioner of insurance shall issue the annual certificate as provided by law." (Emphasis supplied.)

On the other hand, section 515.24, Code of 1958, provides: "For the purpose of determining the basis of any tax upon the 'gross amount of premiums', or 'gross receipts from premiums

* * *', now or hereafter imposed upon any fire or casualty insurance company under any law of this state, such gross amount or gross receipts shall consist of the gross premiums or *receipts for direct insurance,* without including or deducting any amounts received or paid for reinsurance * * *." (Emphasis supplied.)

In support of their motion to dismiss, defendants contend that discretion is vested in the commissioner to determine whether the business being conducted was direct insurance or reinsurance, and that this determination once made in good faith, and not arbitrarily, was not subject to review and direction by the courts in mandamus; that the petition shows on its face that it is an attempt to control by mandamus the exercise of a discretionary power with reference to a factual determination made by the commissioner, and that his decision was not made arbitrarily or capriciously.

Unless the statutes somehow empower the commissioner to make a final determination as to what is direct and what is reinsurance, we must hold he has no discretion, for the amount of the tax is clearly imposed by the law itself.

II. Mandamus, of course, is a special remedy and will not lie to control the discretion of an official unless by the facts alleged or shown it appears that he has acted arbitrarily or capriciously. Bankers Life and Casualty Co. v. Alexander, 242 Iowa 364, 378, 45 N.W.2d 258, 266, and cases cited therein. Section 661.1, Code of 1958, provides: "The action of mandamus is one brought to obtain an order commanding an inferior tribunal, board, corporation, or person to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust, or station." Of course where discretion is left to the inferior tribunal or person, the mandamus can only compel it to act, but cannot control such discretion. Section 661.2, Code of 1958; Bankers Life and Casualty Co. v. Alexander, supra; Woodbury County v. Talley, 147 Iowa 498, 123 N.W. 746, Ann. Cas. 1912B 782.

The commissioner here expressed doubts as to the extent of his power, duty or discretion, in deciding whether or not the Farmers Mutual was required to pay the two per cent

premium tax under its operation. In his written ruling he said: "* * * we do not feel as an *administrative agency* that we are authorized to make such a determination of law * * *." (Emphasis supplied.)

On the other hand, the plaintiff insists that as the tax is provided by the statute and no power or authority is provided in the statutes for a determination of its applicability by the commissioner, mandamus is the proper remedy herein. Obviously section 432.1 of the Code itself provides for the tax and also grants the exemption. We have searched the Code and find no specific language granting a discretion to anyone in this matter. We furthermore find nothing in chapter 432 or elsewhere inferring such authority. None was cited by counsel, and we conclude there is none. True, in the first instance the commissioner may determine whether or not he will require the duplicate receipt before issuing the annual certificate, but, if that decision is questioned, only the courts have the power to determine the tax liability under the facts disclosed. Such has been our constant holding relating to insurance tax matters. Although this is the first time the decision exempting a company has been questioned in the courts, it is not the first time such a decision has been questioned when the commissioner has required payment of the tax before issuing an annual certificate.

Iowa Mutual Tornado Ins. Assn. v. Fischer, 245 Iowa 951, 954, 65 N.W.2d 162, 164, is a mandamus action brought to compel the state commissioner of insurance to refund premium taxes paid by the plaintiff-company, under protest, on assessments which were not collected from all its members. We affirmed a trial court's action in overruling defendants' motion to dismiss, and its decree entered for plaintiff. It was therein noted that such a remedy was proper *because the statute compelled a refund* and provided no other effective means of redress for the officials' refusal. We think the same reasoning is applicable here. While it is true the question was not specifically raised as to whether that action would lie, we said as to that: "It seems to be conceded that this action will lie if * * * Code sections 518.35 and 432.1 do not subject plaintiff to a premium tax upon assessments levied but not collected. Plaintiff's lia-

bility for such a tax upon uncollected assessments is therefore the only matter presented." So here the only matter of consequence presented is whether a tax is due upon premiums collected on insurance written under the circumstances set forth; in other words, whether it is "reinsurance" as contemplated by the exemption provision in sections 432.1 and 515.24 of the Code. Had the Farmers Mutual been required to pay the tax under their conceded mode of operation, an action to review this decision by mandamus would have fallen squarely under our decision in the Fischer case.

■■ III. Of course it is the ultimate function of the courts to determine whether the commissioner has acted within the powers conferred upon him by law. In the absence of a showing of arbitrary or capricious acts, courts are and should be reluctant to review official decisions as a result of definite powers imposed upon public boards or officials by the legislature, even though they provide no method of review. Bankers Life and Casualty Co. v. Alexander, supra, 242 Iowa 364, 45 N.W.2d 258. So here, although we recognize that a considerable number of powers, duties and obligations are placed upon the commissioner, especially in chapter 515 and as to those specific delegations found in chapter 507B relating to fair practice, we are satisfied as to matters relating to tax liability and collection that his duties are administrative only. He is not directed to determine whether a tax is or is not due and is not directed to determine whether under an operation or contract the insurance is direct or reinsurance. He is told to require the premium tax receipt for direct insurance before issuing the annual certificate. No choice is left to his judgment. Clearly his general obligation to enforce insurance laws of the state (see section 505.8, Code of 1958) does not extend to such tax matters or raise any inference that he has discretion therein. It was so held in Bankers Life and Casualty Co. v. Alexander, supra, 242 Iowa at page 381; Homesteaders Life Assn. v. Murphy, 224 Iowa 173, 175, 177, 275 N.W. 146, 147.

We denied the commissioner of insurance any discretionary powers in tax matters of a like nature in Lincoln Nat. L. Ins. Co. v. Fischer, 235 Iowa 506, 17 N.W.2d 273, and we cited

therein authority from other jurisdictions holding such discretionary powers must be limited to specific areas, such as that found in chapter 507B, and chapter 515 of our Code, referred to in the Alexander case, where some duty to determine, or discretion, is apparent in the legislation. In the Fischer case we said on page 514 of 235 Iowa: "We will content ourselves with a few citations which we think sustain the holding that under a situation such as appears [claim for tax refund] in the record in this case the Insurance Commissioner does not have any discretionary powers * * * [citing cases]." Reference was made therein to the case of Supervisors v. United States, 71 U. S. 435, 447, 18 L. Ed. 419, considering an Illinois statute involving a similar question. The United States Supreme Court had this to say on the matter: " 'In all such cases it is held that the intent of the legislature, which is the test, was not to devolve a mere discretion, but to impose "a positive and absolute duty." The line which separates this class of cases from those which involve the exercise of a discretion, judicial in its nature, which courts cannot control, is too obvious to require remark * * * [citing cases].' "

Here there can be no question but what if the insurance written is direct insurance the commissioner must require the payment of the tax. The duty imposed is positive and absolute. Without being directed or permitted to interpret the involved reinsurance contract or construe the statutory reference to reinsurance, his duty is positive and must be only administrative.

In other similar matters this court has been called upon to determine whether an act which a statute states shall be performed by a public officer is ministerial or one involving discretion. In First National Bank v. Hayes, 186 Iowa 892, 901, 171 N.W. 715, 718, we approved certain definitions of ministerial and discretionary acts which we drew from other authorities. A ministerial act was defined as " 'one which a person or board performs upon a given state of facts, in a prescribed manner, in observance of the mandate of legal authority, and without regard to or the exercise of his own judgment upon the propriety of the act being done.' " (Citing Henry v. Taylor, 57 Iowa 72; Benjamin v. District Township,

50 Iowa 648, and collected cases in 79 Am. Dec. 468.) We also referred therein to 26 Cyc. 160, where it was stated: " 'The distinction between merely ministerial and judicial or other official acts seems to be that, where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial. But where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial. Discretion may be defined, when applied to public functionaries, as the power or right conferred upon them by law of acting officially under certain circumstances, according to the dictates of their own judgment and conscience, and not controlled by the judgment or conscience of others.' "

Also see Independent Sch. Dist. v. Christiansen, 242 Iowa 963, 970, 49 N.W.2d 263, and authorities cited therein.

While the commissioner may feel under the facts disclosed that the tax is not due and thus not demand the tax receipt, he has not been empowered to make a determination of that issue so as to bar review by the courts at the request of persons legally interested. It may well be that had the legislature desired such a determination be made by the commissioner, it could have so provided, but under the present law it is well settled that his duty in such a matter is merely ministerial. As pointed out in Independent Sch. Dist. v. Christiansen, supra, such a ministerial act is no less ministerial because he must satisfy himself that certain facts exist. 55 C. J. S., Mandamus, section 63. He had no duty to act according to the dictates of his own judgment. If the business amounted to direct insurance, he must require the duplicate receipt and the commissioner could issue the annual certificate if it was produced "and not till then."

We have examined the authorities cited by appellees and find in each case where mandamus was refused, specific legislative authority appears granting discretionary powers in the board or officer involved. Woodbury County v. Talley, supra, 147 Iowa 498, 123 N.W. 746, Ann. Cas. 1912B 782; Meyer v. The County of Dubuque, 43 Iowa 592; Ross v. City Council of Sioux City, 136 Iowa 125, 113 N.W. 474; Hirsch v. City

of Muscatine, 233 Iowa 590, 10 N.W.2d 71. In each more than an inference of the delegation of power, duty and authority appears, and in each where mandamus was denied it was pointed out official discretion had been provided and exercised. This is especially true in Bankers Life and Casualty Co. v. Alexander, supra, 242 Iowa 364, 45 N.W.2d 258, where specific authority to act was pointed out in sections 515.65, 515.144 (now repealed), and other related sections in the chapter.

Other insurance tax cases which offer support for this conclusion are Lutheran Mutual Aid Society v. Murphy, 223 Iowa 1151, 274 N.W. 907; Yeomen Mutual Life Ins. Co. v. Murphy, 223 Iowa 1315, 275 N.W. 127; Homesteaders Life Assn. v. Murphy, 224 Iowa 173, 275 N.W. 146.

IV. The determination of whether the Farmers Mutual operation was direct or reinsurance is clearly a question of law and fact, a judicial or at least a quasi-judicial function. It involves construction of the tax statutes as well as the legal construction of the "reinsurance" contract. While the distinction between reinsurance and direct underwriting as it relates to premium tax liability is not set forth in the statute, there is merit in plaintiff's contention that it is dependent upon the question of direct liability or privity between the company and the insured. 29A Am. Jur., 1960 Ed., Insurance, section 1757, page 831. The term "reinsurance" has been used so loosely by lawyers, courts and writers that much confusion has now arisen as to what the term actually connotes. 13 Appleman Insurance Law and Practice, pages 433, 434. The true reinsurer is merely an insurance company or underwriter which deals only with other insurance companies as its policyholders. Such meaning we have constantly attributed to it in our statutes and decisions. Globe National Fire Ins. Co. v. American Bonding & Casualty Co., 198 Iowa 1072, 195 N.W. 728, 200 N.W. 737, 35 A. L. R. 1341, and Globe National Fire Ins. Co. v. American Bonding & Casualty Co., 205 Iowa 1085, 217 N.W. 268, 56 A. L. R. 463. So considered, of course, there would be no privity of contract existing between the insured and the reinsurance company.

It is plaintiff's contention that by the very terms of the so-called reinsurance agreement there is much more than the

usual relationship between insurer and reinsurer, and that such assumed control, supervision and relationship, with the original insured makes the Farmers Mutual the actual insurer of the insured. Under the agreement it cannot be said that the county mutual retains all contact with the original insured and handles all matters prior to and subsequent to loss, but on the other hand the Farmers Mutual inspects the risks, prescribes the terms of the policy, may reject or cut the coverage, and adjusts and pays the losses. The county mutual is even prohibited from adjusting or settling with the insured. We are satisfied the agreement discloses a relationship not in harmony with the usual meaning of reinsurance, and may be direct and not reinsurance as connotated in the tax exemptions in sections 432.1 and 515.24, Code of 1958.

 When the reinsurer assumes direct liability to the original insured, there is a substitution of risks rather than reinsurance. 13 Appleman Insurance Law and Practice, pages 433–505. We agree with the Alabama court when it said in United States Fire Ins. Co. v. Smith, 231 Ala. 169, 176, 164 So. 70, 76, 103 A. L. R. 1468: "We are fully persuaded that this reinsurance contract went far beyond mere indemnity, and that the reinsurer, in fact, assumed the liability of the United States Fire Insurance Company upon the policy issued by its Gadsden agency, and agreed not only to pay the losses, if any, to the policyholders, but in the contract the reinsurer obligated itself to 'take charge of and adjust and pay same without expense to the United States Fire Insurance Company.'" The court then decided the so-called reinsurer was not a reinsurer but was directly liable to the insured. We have no doubt the same result must follow from such an action under the reinsurance contract before us now. Also see Barnes v. Hekla Fire Ins. Co., 56 Minn. 38, 57 N.W. 314, 45 Am. St. Rep. 438, Dickson v. Great American Casualty Co., 269 Ill. App. 532, and Whitney v. American Ins. Co., 127 Cal. 464, 59 P. 897.

We conclude that under the reinsurance contract alleged, the business conducted by the Farmers Mutual does not fall within the exemption provided for reinsurance in sections 432.1 and 515.24 of the Code, and that the allegations are sufficient to sustain the action of mandamus herein.

V. The trial court rejected defendants' contention that plaintiff was not a proper party to bring this action, and defendants argue this issue in support of the correctness of the dismissal. The law on this view is not in doubt in Iowa. Plaintiff sued as a citizen, property owner and taxpayer, and pointed out in its petition that revenues from the premium tax involved go into the State general fund, which if insufficient to meet obligations of the State, must be supplemented by State levies upon property owners in the State. It also pointed out that if defendants prevail it will be prejudiced, and that the scheme used by the Farmers Mutual to avoid the two per cent premium tax, if permitted, will result in unfair discrimination in favor of it over plaintiff.

We in Iowa have never accepted the view expressed in several jurisdictions that the right of a taxpayer to vindicate the public interest in compliance with the laws of the State should be restricted only to those cases in which he could demonstrate pecuniary damage, although plaintiff may even be able to do so here. We said in Abbott v. Iowa City, 224 Iowa 698, 703, 277 N.W. 437, 439: "A holding that a citizen and taxpayer, or all the citizens in the city, cannot question the right of the city council to enter into such a vast undertaking * * * unless special personal damages are shown, would practically result in a situation where no one would have a right to question the rights of the council's illegal act in so doing."

In Pierce v. Green, 229 Iowa 22, 39, 294 N.W. 237, 248, 131 A. L. R. 335, this court upheld the right of a citizen and taxpayer to maintain a mandamus action to require compliance with the taxing statutes relative to assessment of property on the part of the State Board of Assessment and Review. Therein we quoted from Cooley to the effect that " 'A discrimination may be attacked by one discriminated against even though the discrimination does not increase his or its tax.' 1 The Law of Taxation (4th Ed.), section 367."

We are satisfied the trial court was correct in refusing to dismiss plaintiff's petition on the ground it was not a proper party plaintiff, and that it may maintain this action of mandamus as party plaintiff under the allegations of its petition.

VI. While there are various other grounds upon which reversal is sought, in view of our decision that no such discretion was given the commissioner in premium tax liability and exemption matters such as that involved herein, they need not be considered.

VII. It may, however, be observed that under chapter 507B, a recent enactment, the legislature has clearly and specifically provided for the exercise of discretion by the commissioner in matters involving unfair discrimination and practice. It provides therein for hearings, decisions and appeals. There is no claim that the tax issue involved herein falls under any of the nine prohibited practices in section 507B.4, or that hearings were held under section 507B.6. Obviously the issue before us does not fall within chapter 507B.

We, therefore, conclude it was error to sustain defendants' motion to dismiss, and that the ruling must be reversed and the cause remanded.—Reversed and remanded.

All JUSTICES concur except OLIVER, J., not sitting.