EDWARD J. COLLINS, appellant, v. IOWA LIQUOR CONTROL COM-
MISSION (chairman and commissioners), appellees.

No. 50295.

(Reported in 110 N.W.2d 548)

September 19, 1961.

Wilson, Maley & Stamatelos, of West Des Moines, for appellant.

Evan Hultman, Attorney General, and John M. Creger, Assistant Attorney General, for appellees.

THORNTON, J.—Plaintiff is an honorably discharged veteran of World War I and started his employment with defendant commission in 1941. On July 22, 1958, a hearing was had before defendant commission, after due notice, on a stated charge of incompetency, pursuant to section 70.6, Code of Iowa, 1958. The commission found the evidence produced at the hearing showed plaintiff was incompetent to perform the duties of his employment and ordered his discharge effective July 15, 1958. By stipulation the date of the hearing had been continued from July 15 to July 22. It was also stipulated plaintiff was to be placed on a status of leave of absence without pay effective July 15.

Plaintiff had been granted sick leave July 9. This leave was terminated by the commission on July 15. At that time the request of plaintiff's counsel for further sick leave was refused. At the close of the hearing July 22 counsel for plaintiff renewed the request for an extension of the sick leave. Plaintiff had accumulated 83½ days of sick leave.

Plaintiff brought certiorari to review his discharge pursuant to section 70.6, Code of Iowa, 1958. He urged in the trial court and here the discharge was without support in the evidence. And he brought the mandamus action to compel payment of his wages for the accumulated sick leave.

I. Section 70.6, Soldiers Preference Law, provides for the discharge, after notice and hearing upon stated charges, for incompetency of a veteran with the right to a review by certiorari. The right to review in the trial court is not limited to jurisdiction or an illegality, but the court will consider anything which legitimately bears on whether the discharge was for any reason wrongful. Butin v. Civil Service Commission, 179 Iowa 1048, 1052, 162 N.W. 565. The case is not triable de novo here; if there is substantial evidence to support the trial court's findings of fact we are bound thereby. Klatt v. Akers, 232 Iowa 1312, 1324, 5 N.W.2d 605, 146 A. L. R. 808. On the trial the parties have the right to and here did introduce evidence in addition to that taken before the commission. Allen v. Wegman, 218 Iowa 801, 254 N.W. 74.

■ The trial court found incompetency on the part of plaintiff to perform the duties of his employment. We hold there is substantial support in the evidence for this finding. In James v. Winifred Coal Co., 184 Iowa 619, 625, 626, 169 N.W. 121, 124, this court defined incompetency as follows:

■ "Incompetency, in the law of master and servant, means want of ability adapted to the performance of a task, either because of lack of experience, natural qualifications, or deficiency of disposition to use one's ability and experience properly."

Webster's New International Unabridged Dictionary, Second Edition, defines "incompetency" as incompetence, and "incompetence" as want of physical, intellectual or moral ability; insufficiency; inadequacy. Synonyms there listed are, disability, unfitness and inability.

Plaintiff cites a definition of incompetency from Hatfield v. New Mexico State Board of Registration for Professional Engineers and Land Surveyors, 60 N. M. 242, 246, 290 P.2d 1077, and we find at pages 1079 and 1080 of 290 P.2d the New Mexico court uses Webster's definition and Bouvier's definition both to the same effect.

We believe it is fair to say a person who habitually fails to perform his work with the degree of skill or accuracy usually displayed by other persons regularly employed in such work is incompetent. And the same is true of one who usually performs substantially less than others regularly so employed. And substantial evidence showing such would support a charge of incompetency under section 70.6, Code of Iowa, 1958.

The evidence is, plaintiff suffered from arthritis and had at the time he was first employed in 1941; he was unable to, and was not called on to, perform three phases of the work of a liquor store clerk, namely, delivering of bottles to customers, binning of bottles and unloading merchandise as it comes to the store. Three phases of the work, checking customers' tickets, cashiering and making reports, he was not prevented from doing because of his arthritis. During most of the time plaintiff worked he checked tickets, he did some cashiering and made

out a few reports. A previous hearing charging plaintiff with incompetency had been held and as a result thereof he was returned to duty June 6, 1958. A work survey showing errors of each employee in the store was offered in evidence. This survey covered work from June 6 to 30. This was reported in three phases, June 6 to June 14 inclusive, during this time 4440 customers' tickets were checked, of these plaintiff checked 1384, he had 20 out of 28 errors. From June 17 to June 23 a total of 2948 tickets were checked, plaintiff checked 1203, he made ten of 15 errors. During the same time 23 errors were caught by the cashiers of which plaintiff made 20. From June 24 to June 30 there was a total of 3062 tickets, plaintiff checked 1292, there were 16 errors of which plaintiff made ten. Again the cashiers caught 31 errors of which plaintiff made 27. When two checkers were working plaintiff would check only one third of the tickets to two thirds for the other checker. There was evidence he did not follow directions in checking and correcting tickets. He was much slower operating the cashiering machines, he handled one customer to three on the other machine. During December 1957 there was a total of 191 errors made by 13 employees; of these plaintiff made 96. In January 1958 there was a total of 66 errors of which plaintiff made 37; during that month there were 11 employees. Fellow employees who had worked with plaintiff for six to eight years testified there was not much change in the number of errors plaintiff made, perhaps he was making a few more. This constitutes a brief summary of unrefuted testimony. It is substantial evidence plaintiff usually performed substantially less accurate work than an average employee. It is substantial evidence of repeated carelessness or inattention. It is substantial evidence of inability or lack of fitness to discharge his duties. If an individual has ever so much ability but does not use it and as a result of carelessness and inattention makes substantially more errors than the average worker or performs substantially less work, he is incompetent within the meaning of incompetency as used in section 70.6.

II. In his argument bearing on his mandamus action plaintiff states, "If the discharge was wrongful * * * then

Mr. Collins was entitled to remain on sick leave, unless the reasons therefor were invalid or fraudulent." We have pointed out there is substantial evidence to support plaintiff's discharge. He urges the court was in error in its conclusions of law and the commission acted arbitrarily and capriciously in refusing to grant plaintiff his accumulated sick leave and pay him therefor.

 Mandamus is available to compel performance of an act which the law enjoins as a duty of public office. Section 661.1, Code of Iowa, 1958. But it will not lie to control discretion, section 661.2, Code of Iowa, 1958, unless the official is shown to have acted arbitrarily or capriciously. Iowa Mutual Tornado Insurance Association v. Timmons, 252 Iowa 163, 105 N.W.2d 209. Mandamus is tried in equity and the review here is de novo. Section 661.3, Code of Iowa, 1958; rule 334, Rules of Civil Procedure; and Masteller v. Board of Control of State Institutions, 251 Iowa 234, 100 N.W.2d 111.

Sick leave is provided by section 79.1, Code of Iowa, 1958:

"* * * Leave of absence of thirty days per year with pay may be granted in the discretion of the head of any department to employees of such department when necessary by reason of sickness or injury; unused portions of such leave for any one year may be accumulative for three consecutive years. * * *."

██ As used in section 79.1 "* * * may be granted in the discretion * * * when necessary * * *" operates to confer discretion upon the commission to grant sick leave. Only where it is necessary to give effect to the clear policy and intention of the legislature can the use of "may" be construed in a mandatory sense. Wolf v. Lutheran Mutual Life Insurance Co., 236 Iowa 334, 340, 18 N.W.2d 804. Here the legislature in the preceding sentence in section 79.1 in providing for employees' vacations states, "All employees * * * are granted * * *" and in the succeeding sentence in providing for an additional leave of absence for injuries received in line of duty stated, "* * * may upon the recommendation * * * be granted * * *."

 The plain intent of the language of the statute is, the vacations are mandatory and the employee is entitled thereto on fulfilling the requirements of service, the leave of absence

is to be granted by the head of the department when necessary by reason of sickness or injury. An employee who is. neither sick nor injured cannot be granted a leave of absence with pay. Again the much quoted admonition of the late Justice Oliver Wendell Holmes is pertinent, "We do not inquire what the legislature meant. We ask only what the statute means." Cook v. Bornholdt, 250 Iowa 696, 698, 95 N.W.2d 749, 751.

The evidence before the commission and the trial court relating to sick leave for plaintiff is, he was granted sick leave on July 9, 1958, the hearing before the commission was originally set for July 15, 1958, plaintiff appeared by counsel but was not personally present, his counsel produced letters from two physicians, one stating the physician had treated plaintiff for a prolapse of his hemorrhoids and plaintiff would be off work for ten days, the other stated plaintiff's arthritis was becoming increasingly worse and requested plaintiff be given sick leave and that plaintiff not work where he needed to stand on his feet or use his legs. Both letters were dated July 11, 1958. Plaintiff's counsel requested further sick leave, this was denied, apparently because of outside information known to the commission to the effect plaintiff was physically able to be present and represent himself. By stipulation plaintiff was placed on leave-of-absence status without pay effective July 15 and the hearing was continued to July 22. At the close of the hearing July 22 plaintiff, by counsel, renewed his request for sick leave. The only evidence relating to plaintiff's physical condition other than the two letters was given by plaintiff that he was confined to his bed because of his hemorrhoids most of the time during the past two weeks, that when he works on his feet his hemorrhoids come out, that he had this condition for eight or ten years and his then condition was caused by picking up tickets during the week of July 7. He stated he was capable of performing the position of a checker. No additional medical testimony was offered in the trial court. Plaintiff then testified:

"On July 8th or 9th of 1958, I had sick leave and submitted two letters by my Physician to the Iowa Liquor Control Commission. Dr. Sternagel submitted one for my hemorrhage and

Dr. Van Natta for the operation on my hands. On July 8, I had hemorrhages and skin cancer on my right hand, which was removed. I am still taking treatments for the skin cancer. The longest this hemorrhage condition lasted was thirty or forty days."

Before plaintiff can prevail on the ground defendant acted arbitrarily or capriciously in refusing his request for sick leave it must appear sick leave was necessary by reason of plaintiff's sickness or injury. The burden of proof is on plaintiff. See Welch v. Borland, 246 Iowa 119, 66 N.W.2d 866; and Bankers Life & Casualty Co. v. Alexander, 242 Iowa 364, 378, 45 N.W.2d 258, and citations. From the evidence before the commission it was entitled to find plaintiff would only be incapacitated ten days from July 7. Plaintiff in his testimony did not indicate whether he was then incapacitated. Before the trial court, though plaintiff stated his hemorrhagic (apparently from the hemorrhoids) condition lasted 30 or 40 days, he does not say he was unable to perform the work of a checker. The hearing before the trial court was December 16, 1959, at a time when evidence of the extent of plaintiff's incapacity could have been readily available.

From the evidence it does not so clearly appear plaintiff was incapacitated on July 22, 1958, by reason of sickness or injury that the trial court or this court can say the commission acted arbitrarily or capriciously.—Affirmed.

All JUSTICES concur.