ARROW EXPRESS FORWARDING COMPANY, appellant, v. IOWA STATE COMMERCE COMMISSION (members), appellees.

No. 51350.

(Reported in 130 N. W.2d 451)

September 22, 1964.

Stewart, Miller, Wimer, Brennan & Joyce and Stephen Robinson and Stephen C. Robinson, all of Des Moines, for appellant.

John J. Goen, Commerce Counsel, and Leo J. Steffen, Jr., and Harold W. Bracewell, Assistant Commerce Counsel, for appellees.

MOORE, J.—May 7, 1963, plaintiff, Arrow Express Forwarding Company (hereinafter referred to as Arrow), made application for a contract carrier permit under chapter 327, Code of Iowa, 1962, to the Iowa State Commerce Commission (hereinafter referred to as the commission). As part of its investigation of the operation proposed in Arrow's application, the commission held an informal hearing on May 17, 1963, and scheduled a formal hearing for June 14.

May 28 Arrow filed its petition for writ of mandamus alleging it had met all requirements of chapter 327 and the commission's rules and regulations in the filing of its application. Arrow asked the commission be compelled to immediately grant the requested permit.

On trial of the issues June 4, 1963, and after Arrow had submitted its case in chief, the commission moved for a dismissal. The court on June 12 found the commission has authority under chapter 327 to conduct investigations of proposed operations of applicants for contract carrier permits, the commission had not taken an unreasonable time investigating Arrow's application, and sustained the commission's motion to dismiss. Arrow has appealed.

Arrow asserts the trial court erred in each of its findings and sustaining the motion. It argues that under chapter 327 an applicant is entitled as a matter of right to receive a contract carrier permit upon filing application and meeting the technical administrative requirements. In other words, Arrow takes the position the commission has no discretion in the matter and its duty is purely ministerial. We do not agree.

■ The rule seems universally established that where the duty to grant a license or permit is ministerial, it may be enforced by mandamus, but where the grant is discretionary unless the refusal to issue the license or permit is arbitrary and unreasonable mandamus will not lie. Bernstein v. City of Marshalltown, 215 Iowa 1168, 1174, 248 N.W. 26, 28, 86 A.. L. R. 782; Independent Sch. Dist. v. Christiansen, 242 Iowa 963, 969, 49 N.W.2d 263, 267; Welch v. Borland, 246 Iowa 119, 121, 66 N.W.2d 866, 868; 55 C. J. S., Mandamus, section 156; 34 Am. Jur., Mandamus, section 70.

Section 661.2, Code of Iowa, 1962, provides:

"Discretion—exercise of. Where discretion is left to the inferior tribunal or person, the mandamus can only compel it to act, but cannot control such discretion."

We have frequently been called upon to determine whether an act which a statute states shall be performed by a public officer or board is ministerial or one involving discretion. In First Nat. Bk. v. Hayes, 186 Iowa 892, 901, 902, 171 N.W. 715, 718; Taylor County Farm Bureau v. Board of Supervisors, 218 Iowa 937, 940, 252 N.W. 498, 500, and Independent Sch. Dist. v. Christiansen, 242 Iowa 963, 969, 970, 49 N.W.2d 263, 267, we approve these definitions:

■ "A ministerial act has been defined as 'one which a person or board performs upon a given state of facts, in a prescribed manner, in observance of the mandate of legal authority, and without regard to or the exercise of his own judgment upon the propriety of the act being done.' * * *

■ " 'Discretion may be defined, when applied to public functionaries, as the power or right conferred upon them by law of acting officially under certain circumstances, according to the dictates of their own judgment and conscience, and not controlled by the judgment or conscience of others.' "

See also 43 Am. Jur., Public Officers, section 258; 55 C. J. S., Mandamus, section 63.

In the light of these definitions it is evident we must carefully consider the provisions of chapter 327 to determine the duty of the commission. This is the real issue between the parties here.

Section 327.1(5) provides:

"The term 'contract carrier' shall mean any person who does not hold out to the general public to serve it indiscriminately and who, for compensation, engages in the business of transportation of property by motor truck under individual written contracts, thereby providing a special and individual service required by the peculiar needs of a particular shipper, but does not include, (1) a motor carrier as defined in chapter 325, (2) a truck operator, or (3) a person whose transportation by motor vehicle is in furtherance of a private enterprise other than the business of transportation for others for compensation.

"The term 'individual written contract' shall mean an agreement in writing between a contract carrier and a shipper, effective for a duration of at least three months, imposing mutual obligations to tender freight and perform transportation, and specifying the charges. The presence of goods originating from more than five shippers on one vehicle at any one time shall be prima-facie evidence that the carrier is a motor carrier and not a contract carrier."

Section 327.4 states: "Powers. All control, power, and authority over railroads and railroad companies, motor vehicles and motor carriers now vested in the commission, insofar as the same are applicable, are hereby specifically extended to include truck operators and contract carriers."

The commission's control and authority over railroads is found in Code section 474.18 which says: "Investigation and inquiry. The commission shall investigate and inquire into the management of the business of all common carriers subject to the jurisdiction of said commission and keep itself well informed as to the manner and method in which the same is conducted. It shall have the right to obtain from them full and complete information necessary to enable the commission to perform its duties. It shall have power to require the attendance and testimony of witnesses, the production of all books, papers, tariff schedules, contracts, agreements, and documents, relating to any matter under investigation, and to inspect the same and to examine under oath or otherwise any officer, director, agent, or

employee of any common carrier; to issue subpoenas and to enforce obedience thereto."

Section 327.6 declares it unlawful for any contract carrier (with certain exceptions not applicable here) to operate without first obtaining a permit from the commission.

Section 327.7 requires the applicant in addition to other information to state a general description of the territory in which applicant proposes to operate, of the service proposed to be rendered, together with complete description of equipment proposed to be used.

Section 327.15 provides no permit shall be issued until the required insurance coverage is filed and the form thereof approved by the commission.

Section 327.8 states: "Issuance. Upon the filing of the application and *if the applicant shall otherwise comply with the terms and conditions of this chapter,* the commission shall issue to the applicant a permit as herein defined. The actual operation of such motor vehicle or vehicles shall not begin without the written approval of the state department of public safety, stating that the applicant has complied with the prescribed safety regulations." (Emphasis ours.)

The record discloses the commission had been investigating the operations of Arrow for several years and that Arrow had refused to cooperate, would not allow the commission's inspectors to examine its cargo and waybills and ignored the commission's subpoenas. The details are found in our holding against Arrow in In re Iowa State Commerce Commission (Docket No. HA-2287-Investigation of Arrow Express Forwarding Co.) 252 Iowa 1237, 110 N.W.2d 390. At page 1243, 252 Iowa, page 394, 110 N.W.2d, in reference to the commission's powers and duties under section 474.18 we say:

"When the Commission has reason to believe the state laws as to carriers are being violated and a reasonable investigation is initiated, the investigation, we think, is being conducted in the public interest, and such an investigation is proper to determine the operational facts. * * *

"One of its duties, we have said, is to determine whether there are facts and circumstances which would justify a holding

that as a matter of fact the business involved is that of a common carrier under the law."

In Circle Express Co. v. Iowa State Commerce Commission, 249 Iowa 651, 663, 86 N.W.2d 888, 896, in affirming the commission's cease and desist order to a contract carrier found to be illegally operating as a common carrier we say:

"The legislature in its wisdom provided that this determination be left to the commission, which seems well equipped to perform that task, thereby preventing unjust encroachment by different classes of carriers. Clearly this function aids greatly in obtaining necessary and proper regulation of traffic and efficient transportation facilities for the state. * * *

"It may be said that underlying this proceeding is the problem of establishing definite areas of transportation service for the various classes of carriers, for the public benefit. The classes provided by chapters 325 and 327 generally follow the usual distinctions between common and contract carriers. Any serious encroachment could easily destroy or diminish the efficiency of both. To such an extent the public interest is affected."

That an investigation of Arrow's application should be conducted in the public interest is amply established by the evidence here. On December 26, 1962, the commission revoked the contract carrier permits of several carriers on the grounds they together with Arrow had operated illegally as common carriers. A Polk County District Court stay order resulted in a continuation of the operation until May 1963 when the revocations order was affirmed resulting in the carriers and Arrow being compelled to cease operating. Arrow then filed its application for a contract carrier permit.

They proposed to use several of the former contract carrier permit holders and their equipment.

They proposed to haul freight for several of their former shippers but their signed contracts with Arrow showed they could be cancelled or terminated upon 15 days notice. They fail to meet the effective three-month period required by section 327.1(5). This and other requirements of chapter 327 were

being investigated at the time this case was decided by the trial court.

In Peterson v. Iowa State Commerce Commission, 256 Iowa 964, 970, 129 N.W.2d 656, 660, we review the operation of Peterson and other contract carrier permit holders with Arrow and sustain revocation of his permit. We state:

"We believe it is apparent from the testimony of the general manager that Arrow holds out to the public consisting of wholesalers that it will handle freight in the area serviced, at least the evidence is such as the commission could so find. * * *

"The testimony of plaintiff is substantial evidence four regular routes are maintained by Arrow and its contract carrier. Plaintiff testified Arrow directs his transportation activities and the general manager testified all Arrow's freight was moved by contract carriers. * * *

"Plaintiff and Arrow together with other contract carriers can from the foregoing evidence be properly found to be operating as a motor carrier."

The facts in Sherman v. Iowa State Commerce Commission, 253 Iowa 776, 113 N.W.2d 715, and Wood v. Iowa State Commerce Commission, 253 Iowa 797, 113 N.W.2d 710, indicate Arrow knowingly combined with other contract carriers in illegally operating as a common carrier.

We hold the phrase "if the applicant shall otherwise comply with the terms and conditions of this chapter", as written in section 327.8, clearly places the responsibility of investigation to protect the public interest on the commission. Their duty is not merely ministerial. The facts here demonstrate the absurdity of a holding the commission has no discretion in the matter. It is plain the legislature intended to give the commission discretion in determining the qualifications of applicants for contract carrier permits.

The rule is that in the absence of mandatory statutory requirement the power vested in an officer or board to grant licenses carries with it, either expressly or impliedly, the power to exercise reasonable discretion in granting or refusing licenses. 53 C. J. S., Licenses, section 38; 73 C. J. S., Public Administra-

tive Bodies and Procedure, section 71. We hold the words of section 327.8 are not mandatory.

 Another compelling reason the trial court's ruling must be affirmed is the commission is granted statutory revocation authority and our established rule that the power to refuse a license is coextensive with the power to revoke.

Section 327.16 provides: "Revocation of permit. For just cause, after due hearing, the commission may at any time alter, amend or revoke any permit issued. If the holder of the permit or his agent persists in a violation of any safety regulation prescribed by the department of public safety, the latter may recommend to the commission revocation of said permit and such violation shall be grounds for such revocation."

Section 327.21 states: "Violations—effect. For violation by any truck operator of any provision of this chapter or of any rule or regulation promulgated thereunder, the commission may, in addition to other penalties herein provided, suspend or revoke and cancel the permit of such truck operator."

In Bankers Life and Cas. Co. v. Alexander, 242 Iowa 364, 375, 45 N.W.2d 258, 265, where the insurance commissioner refused to issue an insurance company a license upon the ground it used false, deceptive and illegal advertising, we state: "If the commissioner has power to revoke plaintiff's license upon the ground asserted by him, he may refuse to issue a license upon such ground. His power to refuse a license is coextensive with his power of revocation. It would of course be useless to compel issuance of a license which might at once be revoked."

The same rule is announced and followed in State ex rel. National Life Assn. of Hartford v. Matthews, 58 Ohio St. 1, 49 N.E. 1034, 1035, 40 L. R. A. 418; Bankers Union Life Ins. Co. v. Read, 182 Okla. 103, 77 P.2d 26, 29, and Glens Falls Ins. Co. v. Hawkins, 103 Tex. 327, 126 S.W. 1114, 1115.

Here the commission had evidence Arrow together with several contract carriers was operating as a common carrier and might well have revoked at once Arrow's permit, if issued. Further investigation and granting to Arrow an opportunity to be heard could in no way be prejudicial to it. The trial court properly denied Arrow's request for a writ of mandamus.

We find no merit in Arrow's contention the commission had taken an unreasonable length of time without acting on its application. The evidence shows a large number of applications must be considered by the commission, it has a small number of busy employees and an active investigation of Arrow's application was being made without delay.

There being no error, the order and judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.