**CHARLES GABUS FORD, INC., and Charles Gabus, Individually and Assignee, Appellees,**

v.

**IOWA STATE HIGHWAY COMMISSION, Appellant.**

No. 2–56442.

Supreme Court of Iowa.

Dec. 18, 1974.

Richard C. Turner, Atty. Gen., Des Moines, and Asher E. Schroeder, Sp. Asst. Atty. Gen., Ames, for appellant.

Duncan, Jones, Riley & Finley, Des Moines, for appellees.

Heard by MOORE, C. J., and LeGRAND, REES, HARRIS and McCORMICK, JJ.

REES, Justice.

This is an appeal by defendant Iowa State Highway Commission from a judgment and decree directing the issuance of a writ of mandamus compelling defendant to grant plaintiffs access to a frontage road and awarding plaintiffs damages resulting from defendant's alleged tortious interference with a contract.

Plaintiffs in February 1968 entered into an option contract for the purchase of a parcel of land lying proximate to the easterly side of Merle Hay Road in Polk County. Immediately west of the parcel, between it and a frontage road east of Merle Hay Road, was an irregular strip of land owned by defendant Highway Commission. Before they exercised the option to purchase available to them under the contract, plaintiffs sought and obtained assurances from defendant Commission they would be granted unlimited access across the Commission property to the frontage road. Acting on such assurances plaintiffs exercised their option to purchase the property. Plaintiffs then subdivided the property into three parcels, selling to Logan Buick the southerly portion, retaining and improving the northerly portion for their own commercial use, and leaving the third, situated between the property occupied by their own commercial venture and the Logan Buick property, unimproved. Two access roads were granted to plaintiffs and two to Logan Buick, running from the lots they occupied across the Commission property westerly to the frontage road.

In 1971 plaintiffs received an offer from Continental Western Acceptance Corporation to purchase the vacant land lying between the Gabus property and the Logan Buick property. The offer from Continental Western was contingent on the parties being able to obtain access roads from the vacant land across the Commission's property westerly to the frontage road. The following diagram, or plat, will lend visual perspective to the foregoing facts and following discussion:

Shaded area is Highway Commission Property

On October 4, 1971 Continental Western made written application to defendant Commission for two access roads across that portion of the Commission's property lying immediately west of the parcel it had contracted to purchase from plaintiffs. About a month later Continental received from the Commission a request for evidence of ownership of the property in question and some showing for the need of the two requested access roads. Mr. Price, president of Continental, responded to the Commission's letter on November 11, 1971, indicating several reasons for Continental's request for access and, by way of establishing evidence of ownership, enclosing a copy of Continental's offer to buy the property from plaintiffs, the record titleholders of the property. On January 19, 1972 the Commission's representative notified Continental the request for access had been denied, stating: It is "the opinion of the Iowa State Highway Commission that free and convenient access is presently provided to

the property in its present state and ownership". Shortly thereafter plaintiffs submitted to defendant Commission an offer to buy outright the property lying between the frontage road and the property involved in this controversy and the Gabus and Logan Buick properties. The offer was refused.

On April 20, 1972 plaintiffs instituted the within action in the District Court of Polk County, seeking: (a) an injunction restraining defendant from attempting to sell its property adjacent to the parcel which was the subject of the Continental contract; (b) a declaratory judgment construing § 306.23, The Code, 1971 having to do with an adjacent property owner's right of "first option" with respect to Highway Commission property put up for sale; (c) a writ of mandamus ordering defendant to grant the requested access to Continental; and (d) damages for defendant's alleged interference in plaintiffs' contract with Continental. In June, 1972, while the action remained pending, Continental notified plaintiffs it could no longer wait for the question of access to be resolved, and as a result was forced to withdraw its offer to buy the property in question.

In September, 1972 plaintiffs applied to defendant Commission for access across the Commission's property to the frontage road. After learning for the first time that Continental's application had been denied in part because Continental was not the record owner of the parcel to which access was sought, plaintiffs were then informed their application for access had been tabled by the Commission to await the outcome of the action in District Court. It subsequently came to plaintiffs' attention defendant had reclassified its holdings over which access was sought, and intended to sell same to the highest bidder as excess property.

After hearing on plaintiffs' action, trial court entered its decree in judgment on March 20, 1973, directing the issuance of a writ of mandamus requiring defendant Commission to grant plaintiffs the access requested across the Commission property referred to herein, and awarding plaintiffs damages in the total amount of $38,260.27. Following the overruling of defendant's motion for a new trial, this appeal was taken.

Plaintiffs' mandamus action is triable in equity, and our review is *de novo.* Section 661.3, The Code, 1971; Rule 334, Rules of Civil Procedure; Chicago, B. & Q. Ry. Co. v. Iowa State Tax Comm., 259 Iowa 178, 142 N.W.2d 407.

There are basically two issues presented for review:

(1) Whether a writ of mandamus should issue under the circumstances of this case compelling defendant Commission to grant plaintiffs access from the subject property to the frontage road; and (2) whether plaintiffs are entitled to damages for the injury they sustained when Continental Western withdrew its offer to buy the property for which access was sought after such access had been denied.

I. In their petition, plaintiffs sought both equitable and legal relief by requesting a declaratory judgment, the issuance of a writ of mandamus, and monetary damages. This procedure is permitted under rule 22, R.C.P., which recognizes a single plaintiff may join in the same petition as many causes of action, legal or equitable, as he may have against a single defendant. It is apparent from plaintiffs' petition the claim for damages asserted therein is personal to the plaintiffs, but that with respect to their request for a writ of mandamus plaintiffs bring suit as Continental's assignee whose contractual rights they acquired by assignment.

Defendant argues plaintiffs' action for mandamus must be turned away at the threshold because there was no showing Continental Western, plaintiffs' assignor, sustained, or might sustain, damages because of defendant's failure to act, a showing it contends is required by § 661.9, The Code, as a prerequisite for the maintenance of a mandamus action.

We are not persuaded by defendant's argument for two reasons. First, we believe the record establishes Continental Western sustained damages by virtue of defendant's failure to grant the requested access inasmuch as it was impelled thereby to withdraw its offer to plaintiffs. Second, and alternatively, we believe that although plaintiffs brought suit as Continental's assignee, they in fact are real parties in interest with respect to the mandamus action, who indisputably sustained damages because of defendant's failure to act. Looking to the entire record as triers *de novo* on appeal, we thus conclude defendant's argument plaintiffs failed to satisfy the prerequisite of § 661.9 regarding the showing "damages" were sustained is without merit.

II.   The scope and purpose of mandamus are defined in § 661.1, The Code, 1971, which provides:

> "The action of mandamus is one brought to obtain an order commanding an inferior tribunal, board, corporation, or person to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust, or station."

▮ We have enunciated several principles touching upon the function of the writ of mandamus and defining situations in which it may properly issue. Significant among these is the general rule mandamus will lie to compel performance of an act which the law enjoins as a duty of public office, but cannot control discretion unless the official actor is shown to have acted arbitrarily or capriciously. Section 661.2, The Code, 1971; Reed v. Gaylord, 216 N.W.2d 327, 331 (Iowa 1974); Stith v. Civil Service Comm. of Des Moines, 159 N.W.2d 806, 808 (Iowa 1968); Arrow Express Forwarding Co. v. Iowa State Commerce Comm., 256 Iowa 1088, 130 N.W.2d 451; Collins v. Iowa Liquor Control Comm., 252 Iowa 1359, 110 N.W.2d 548; Iowa Mutual Tornado Ins. Ass'n v. Timmons, 252 Iowa 163, 105 N.W.2d 209.

▮ The essential prerequisites for an action seeking mandamus under the Code have been discussed in a number of cases: (a) duty enjoined by law upon the defendant, in the performance of which the plaintiff, if a private individual, has a personal interest; (b) a breach or non-performance of such duty by the defendant; (c) a legal right in the plaintiff to damages because of such non-performance; and (d) absence of any other adequate remedy in the ordinary course of the law. Van Buskirk v. Iowa State Highway Comm., 255 Iowa 342, 122 N.W.2d 351, and citations. See § 661.9, The Code, 1971.

The record clearly establishes three of the prerequisites set out above have been satisfied in this case. Plaintiffs have a personal interest in the dispute, they have no adequate remedy in the ordinary course of the law, and they would ordinarily (assuming defendant's non-performance was unjustified) have a legal right to damages.

▮ We must therefore consider the other prerequisites for a mandamus action, and specifically the question whether the granting of access upon the application of Continental Western was a "duty enjoined by law" upon the defendant. Assuming it was such a duty, the question then is whether the duty was subject to the exercise of discretion on the part of defendant, or was merely ministerial in character. If the former, mandamus will lie only if it is shown defendant acted arbitrarily or capriciously in denying the request for access. See Arrow Forwarding Co., *supra*. If the latter, mandamus lies regardless whether defendant acted reasonably or not.

▮ In resolving the question whether defendant had a duty to grant access in this case, and if so whether such duty was subject to the exercise of discretion or was merely ministerial, we must first examine defendant's statutory prerogatives. Section 306A.8, The Code, 1971 generally authorized defendant to regulate service (frontage) roads in the same manner as it was authorized to regulate controlled access

facilities. Since 306A.3, The Code, permitted defendant discretion to restrict or prohibit the use of controlled-access facilities, it might be argued the granting of access to frontage roads is also subject to defendant's discretion. In any event, it is clear Chapter 306A, The Code, generally imposed on defendant the duty to grant, control, and regulate access.

With respect to the question whether defendant might have exercised discretion in passing upon requests for access to frontage roads, we note the Highway Commission established a number of departmental rules and regulations under the authority granted in Chapter 306A governing the control of access and the construction of highway entrances. See generally Iowa Departmental Rules, 1971, p. 474, et seq. Iowa departmental rule 1.3 sets out the procedure property owners must follow in applying for entrance permits, and rule 1.3(2) suggests the Commission had some discretion in passing on applications for such permits. Rule 1.4(3)a, which dealt specifically with access to frontage roads, would appear to be in conflict with rule 1.3(2) in that it at least facially denies the Commission any discretion in passing on applications for access to frontage roads:

> "When and where a frontage road is established and opened to public travel, access from the abutting property shall be to the frontage road.
>
> "a. The said access to frontage roads constructed and maintained by the Commission *shall be unlimited in number* * * *." (Emphasis supplied).

We have spoken frequently to the question whether an act which a statute provides shall be performed by a public officer or board is ministerial or one involving the exercise of discretion. Independent School District of Danbury v. Christiansen, 242 Iowa 963, 969–970, 49 N.W.2d 263, 267; Taylor County Farm Bureau v. Board of Supervisors, 218 Iowa 937, 940, 252 N.W. 498, 500–501; First National Bank of Remsen v. Hayes, 186 Iowa 892, 901–902, 171 N.W. 715, 718. In the foregoing cases, and more recently in Arrow Express, *supra*, 130 N.W.2d at 453, the following appears:

> "A ministerial act [is] 'one which a person or board performs upon a given state of facts, in a prescribed manner, in observance of the mandate of legal authority and without regard to or the exercise of his own judgment upon the propriety of the act being done' * * *.
>
> "Discretion * * *, when applied to public functionaries [is] the power or right conferred upon them by law of acting officially under certain circumstances, according to the dictates of their own judgment and conscience, and not controlled by the judgment or conscience of others."

See generally 43 Am.Jur., Public Officers, § 258, 55 C.J.S. Mandamus § 63.

Although departmental rule 1.4(3)a referred to above appears to have placed defendant's function in passing on requests for access to frontage road within the definition of ministerial acts approved by this court, the other departmental rules cited, as well as Ch. 306A generally, seem to suggest defendant might have properly exercised some discretion in this area, and cannot be entirely ignored. After reading the statute together with all the rules mentioned above, we conclude defendant had *some* discretion in passing on access requests. Under the circumstances of the instant case, however, especially in view of the fact defendant was aware of the legitimate purposes for which additional access was requested, and did at one time represent to plaintiffs access could be obtained, we believe that discretion was exercised in an arbitrary and capricious manner. It necessarily follows, then, the writ of mandamus compelling defendant to grant the requested access was properly ordered by the trial court. Arrow Express, *supra*.

III. It is apparent from the pleadings in this case plaintiffs' action for damages against the defendant Commission sounds in tort, and it is clear trial court so con-

sidered the action in awarding damages to plaintiffs on a finding defendant's refusal to grant the requested access constituted a tortious interference in plaintiffs' contract with Continental Western.

█ Tortious or wrongful interference with contractual relations has been recognized and held actionable in a number of Iowa cases. See Stauffer Chemical Co. v. Allied Gas & Chemical Co., 328 F.Supp. 785 (D.C.Iowa 1971); Wilson & Co. v. United Packinghouse Workers of America, 181 F.Supp. 809 (D.C.Iowa 1960); Iowa Securities Co. v. Schaefer, 256 Iowa 219, 126 N.W.2d 922. For a general historical treatment of the tort of interference with contractual relationships, see Prosser, 4th Ed., § 129, p. 927, et seq.

█ The defendant Commission is an arm of the State, and therefore plaintiffs' action is against the sovereign. Rhodes v. Iowa State Highway Comm., 250 Iowa 416, 94 N.W.2d 97, 99. See also Levy v. Iowa State Highway Comm., 171 N.W.2d 530 (Iowa 1969); Bachman v. Iowa State Highway Comm., 236 Iowa 778, 20 N.W.2d 18.

█ It being therefore obvious the suit of the plaintiffs for damages is nothing more nor less than a suit in tort against the sovereign, a showing must be made the State waives sovereign immunity or the plaintiffs' action in tort comes within a statutory exception to the common law principle of sovereign immunity if the damage award is permitted to stand. See Bachman v. Iowa State Highway Comm., *supra*.

Rule 9, R.C.P., provides:

"Actions by and against State: The State may sue in the same way as an individual. * * * It may be sued as provided by any statutes in force at the time."

Section 613.8, The Code, sets out a general waiver of sovereign immunity by the State with respect to suits involving title to real estate, partition of real estate, lien and mortgage foreclosures and lien priority controversies. Section 613.11, The Code, contains a similar waiver by the State with respect to actions brought against the State Highway Commission involving "any claim, right, or controversy arising out of the work performed, or by virtue of the provisions of any construction contract entered into by the Iowa state highway commission."

In Megee v. Barnes, 160 N.W.2d 815 (Iowa 1968), trial court denied a breach of contract claim for damages against the State on grounds the express mention of forms of action in which the State consents to be sued and waives its immunity from suit under § 613.8, The Code, impliedly excluded any other waiver of sovereign immunity, including a waiver of immunity with respect to suits for breach of contract. We affirmed.

Megee was overruled by Kersten Co., Inc. v. Department of Social Services, 207 N.W.2d 117 (Iowa 1973), where we recognized a suit on contract against the State holding the State, by entering into a contract, waived the defense of sovereign immunity and consented to be sued for a breach thereof.

In this matter the State relies on *Megee* in arguing defendant is not subject to plaintiffs' suit for damages, whereas plaintiffs rely on *Kersten* for the proposition defendant is so subject to suit. We conclude neither reliance is well placed. Both *Megee* and *Kersten* dealt with claims arising from the State's breach of a contract, actions sounding in contract. Plaintiffs' suit for damages in the matter before us sounds in tort predicated as it is on the allegation defendant's denial of access constituted a tortious interference with plaintiffs' contract with Continental Western.

Sounding in tort, plaintiffs' action cannot come within the exceptions to the common law principle of sovereign immunity recognized by § 613.8, The Code, and *Kersten*. Moreover, since the instant controversy does not involve any of the situations referred to in § 613.11, The Code, where the

State waives sovereign immunity otherwise attendant to suits against the Highway Commission, plaintiffs cannot avail themselves of the exception to the principle of sovereign immunity permitted by that section.

IV. In light of the foregoing, the sole remaining statutory authorization whereunder plaintiffs might have brought their action in tort for damages against defendant Commission, is Chapter 25A, The Code, otherwise known as the State "Tort Claims Act". While the Iowa "Tort Claims Act" abrogates, with some exceptions not applicable here, the tort immunity of the State, a tort claim against the State must in the first instance be presented for administrative consideration and disposition. Section 25A.3, The Code, 1971. The relevant statutory provision in this regard is § 25A.3, The Code, which provides in pertinent part: The State appeal board is authorized "to consider, ascertain, adjust, compromise, settle, determine, and allow any claim as defined in this chapter". By conferring on a claimant the right to bring a damage action against the State in district court only after an administrative determination has been made by the State Tort Claims Appeals Board, the Act contemplates resort to courts by claimants only after they have once exhausted their administrative remedies. Sections 25A.4, 25A.5, The Code, 1971. Only in the absence of an administrative determination satisfactory to a claimant, does the Tort Claims Act confer upon claimants the right to bring an action at law. Section 25A.4, The Code. The action of plaintiffs for damages could, therefore, not be brought until the administrative remedy had been exhausted. Section 25A.5, The Code; Weisbrod v. State, 193 N.W.2d 125; see Oliver v. Iowa Power & Light Co., 183 N.W.2d 687, 691 (Iowa 1971); Davis, Administrative Law Treatise, §§ 20.01, 20.10 (1959); 21 Drake L.Rev. 1, 16–23.

■ V. The doctrine of exhaustion of administrative remedies is closely related to the problems of primary jurisdiction. See 51 Harv.L.Rev. 1251, 1260–1261. Ordi-narily, an administrative remedy must be exhausted before resort can be had to courts *if* an administrative agency has "primary" or "exclusive" jurisdiction of a controversy. The doctrine does not apply where, by the terms or implications of the statute authorizing an administrative remedy, such remedy is permissive only or not exclusive of the judicial remedy, warranting the conclusion that the legislature intended to permit resort to the courts even though the administrative remedy has not been exhausted. Oliver v. Iowa Power & Light Co., *supra*; Davis, Administrative Law Treatise, *supra*; see also 21 Drake L.Rev., *supra*; 73 C.J.S. Public Administrative Bodies and Procedure § 40, p. 347, § 41, p. 351.

Whether a particular administrative agency has primary jurisdiction so that the doctrine of exhaustion of remedies might apply depends on the statutory scheme. "The doctrine applies where the statute provides for an administrative remedy, even though in general terms, even though the terms of the statute do not provide for 'exclusive jurisdiction' or make the exhaustion of the remedy a condition of the right to resort to the courts * * *." Oliver, *supra*, 183 N.W.2d at 691 and citations.

■ A significant test of exclusiveness, and hence of whether primary jurisdiction can be said to exist, is the adequacy of the administrative remedy. Inadequacy of that remedy to provide the relief a litigant seeks constitutes some indication the remedy is not exclusive, and therefore, that an independent action can be maintained in a court before the administrative remedy is exhausted. Goldstein v. Groesbeck, 142 F.2d 422 (2 Cir.), cert. den., 323 U.S. 737, 65 S.Ct. 36, 89 L.Ed. 590. In view of this statutory authority of the State Appeal Board to pass upon claims, we must conclude the adequacy test to determine whether primary agency jurisdiction exists is satisfied here. It is clear the board is empowered to grant in the proper case full relief to any tort claimant against the State.

In addition to meeting the adequacy test, the provisions of the Tort Claims Act make exhaustion of the administrative remedy a condition precedent to the right to resort to the courts:

"No suit shall be permitted under this chapter unless the state appeal board has made final disposition of the claim * * *."

See § 25A.5, The Code.

■ In light of the foregoing, the State Appeal Board has "primary" or "exclusive" jurisdiction of tort claims against the State. It follows, therefore, the doctrine of exhaustion may be properly invoked where tort claimants against the State do not "in the first instance" submit their claims to the board for consideration and disposition. See Weisbrod, *supra*; see also 17 Drake L.Rev. 2, at 189, 192.

In the matter before us here, plaintiffs instituted their damage action against the State in district court without first submitting a claim to the State Appeal Board, or otherwise pursuing the administrative remedy. Defendant did not object to the fact plaintiffs had not in the first instance filed a claim with the appeal board. The claim was litigated below and trial court ultimately awarded substantial damages. The obvious question before this court then is whether we can invoke the doctrine of exhaustion even though plaintiffs' claim was considered and litigated in the trial court apparently with the consent of all parties.

To resolve that question we should explore the doctrine of exhaustion. Generally, the doctrine requires that where a remedy before an administrative agency is provided, relief must be sought by exhausting the remedy before the courts will act. It is essentially a rule of judicial administration, a product of the exercise of judicial restraint, resting on considerations of comity and convenience. Exhaustion of remedies is designed to promote orderly procedures within the judicial system by requiring a preliminary administrative sifting process, especially in those instances where statutes envision prior resort to an administrative agency. By the invocation of the doctrine, courts seek to avoid interfering with functions of the administrative agency by withholding judicial action until the administrative process has been undertaken and has run its entire course. See generally, 2 Am. Jur.2d, Administrative Law, § 595.

■ In view of its nature we hold the doctrine of exhaustion, as applied to the matter before us here, is not a defense subject to waiver if not asserted by a party to the controversy. It therefore necessarily follows this court may properly invoke the doctrine here even though plaintiffs' claim was litigated below, and defer judgment on plaintiffs' claim until they have pursued and exhausted the administrative remedy available to them under Ch. 25A, The Code. Any other holding would serve as precedent to permit subsequent tort claimants against the State to bypass the statutory machinery designed precisely for the purpose of handling such claims against the State.

In so holding, we are not "closing the door" on plaintiffs, inasmuch as their claim against the State remains alive and viable by virtue of § 25A.13, The Code. In any event, in view of the fact the defendant did not elect to raise the question of exhaustion of remedies in the trial court, we now hold plaintiffs may pursue the administrative remedies before the State Appeal Board irrespective of any other limiting interpretation or construction of § 25A.13, The Code.

This case is, therefore, affirmed with respect to the court's judgment and decree directing the issuance of a writ of mandamus against defendant. We reverse the trial court's order and judgment awarding damages to the plaintiffs.

Affirmed in part, reversed in part.