SPENCER'S MOUNTAIN, INC., an Iowa Corporation, Appellee,

v.

POTTAWATTAMIE COUNTY and Charles E. Hales, Pottawattamie County Engineer, Appellants.

No. 63352.

Supreme Court of Iowa.

Nov. 14, 1979.

Kenneth E. Tyler, Asst. Pottawattamie County Atty., for appellants.

Jack W. Peters of Stuart, Tinley, Peters, Thorn, Smits & Sens, Council Bluffs, for appellee.

Considered by REYNOLDSON, C. J., and REES, HARRIS, McCORMICK, and McGIVERIN, JJ.

McCORMICK, Justice.

The question here is whether a county engineer exceeded his statutory authority and abused his discretion in refusing to approve a road plan in a rural subdivision. The trial court entered a declaratory judgment adverse to the engineer, and he and the county appealed. We reverse.

Plaintiff, Spencer's Mountain, Inc., is the developer of a forty-eight acre rural subdivision on a bluff north of Honey Creek in Pottawattamie County. The top of the bluff is approximately 300 feet above the elevation of an adjacent highway. After obtaining two zoning variances and approval of its road plan from the county board of supervisors, and despite objections from county engineer Charles E. Hales, plaintiff constructed a serpentine 3800-foot road from the highway to the top of the bluff.

In this declaratory judgment action brought in equity, plaintiff sought alternatively to have the court order Hales to approve the road plan or to invalidate his refusal to approve it. After trial, the court found Hales lacked statutory authority to disagree with the board of supervisors' decision and abused his discretion in disapproving the plan. On that basis, the court held his disapproval was invalid and ineffective. A judgment was entered which declared the road to be part of the county secondary road system.

In challenging the judgment, defendants contend Hales had the authority to differ with the board's decision to accept the road plan and did not abuse his discretion in doing so in this case.

The governing statute is section 306.21, The Code 1977, which provides:

All road plans, plats and field notes and true and accurate diagrams of water, sewage and electric power lines for rural subdivisions shall be filed with and recorded by the county auditor and approved by the board of supervisors and the county engineer before the subdivision is laid out and platted, and if any proposed rural subdivision is within one mile of the corporate limits of any city such road plans shall also be approved by the city engineer or council of the adjoining municipality. Such plans shall be clearly designated as "completed", "partially completed" or "proposed" with a statement of the portion completed and the expected date of full completion. In the event such road plans are not approved as herein provided such roads shall not become the part of any road system as defined in this chapter.

The parties agree the statute requires the approval of rural subdivision road plans by the county engineer as well as the board of supervisors before a subdivision road becomes part of the county road system. However, plaintiff asserted and the trial court agreed that its road plan met the subdivision requirements of the county zoning ordinance, except provisions for width and composition of paving upon which variances had been granted. The court held that Hales could not impose a higher engineering standard than provided for by the board of supervisors in exercising its zoning powers. Consequently, he was held to have exceeded his authority under section 306.21 and to have acted arbitrarily.

The problem with the premise of this holding is that the board of supervisors lacks statutory authority to bind the county engineer by its judgment on road engineering standards. Its zoning powers are enumerated in section 358A.3, The Code 1977, which provides in relevant part:

Subject to the provisions of section 358A.1 and 358A.2, the board of supervisors of any county is hereby empowered to regulate and restrict the height, number of structures, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence or other purposes, and to regulate, restrict and prohibit the use for residential purposes

of tents, trailers and portable or potentially portable structures; provided that such powers shall be exercised only with reference to land and structures located within the county but lying outside of the corporate limits of any city.

This provision gives the board the authority to regulate land use, but does not give it the power to adopt engineering standards which override the authority of the county engineer under section 306.21 to pass upon subdivision road plans. Nor is there any conflict between the powers granted the board in section 358A.3 and the authority given to the engineer in section 306.21.

■ Moreover, the general authority of the board to direct the work of the engineer provided for in section 309.18 does not nullify the specific provision in section 306.21. *See* § 4.7, The Code; *Berger v. General United Group, Inc.*, 268 N.W.2d 630, 638 (Iowa 1978) ("terms of a specific statute control over those of a general statute").

Finally, we perceive no conflict between section 306.21 and section 306.4(2), which vests control of secondary roads in boards of supervisors. Section 306.21 relates to procedures for accepting roads into the secondary road system, rather than what governmental entity has jurisdiction and control over them after they are accepted. Furthermore, even if there were conflict between the provisions, section 306.21 would prevail because it is specific and section 306.4(2) is general.

The legislature knows how to give the engineer a mere advisory role when it chooses to do so. *See* § 309.26 ("The board after due consultation with the county engineer"); § 309.28 ("The engineer may in his report recommend"). It also knows how to assign responsibility to the engineer. *See* § 309.21 ("All construction and maintenance work shall be performed under the direct and immediate supervision of the county engineer who shall be deemed responsible for the efficient, economical and good-faith performance of said work.").

Having given the engineer responsibility for the maintenance of secondary roads, it is reasonable to believe the legislature intended for him to exercise his professional judgment in deciding whether private subdivision roads should be accepted into the secondary road system. We find no basis for holding the board of supervisors has a superior role in making that determination. In giving the engineer the authority to pass upon road plans, the legislature vested him with discretion to be exercised according to the dictates of his own judgment and conscience, uncontrolled by the judgment or conscience of others. *See Charles Gabus Ford, Inc. v. Iowa State Highway Commission*, 224 N.W.2d 639, 645 (Iowa 1974).

■ Thus we hold that section 306.21 requires approval of both the board of supervisors and county engineer before a subdivision road can become part of the secondary road system. We also hold that the engineer has authority to disapprove plans even when they meet engineering standards acceptable to the board of supervisors.

The remaining issue is whether Hales' approval was unreasonably withheld in the present case. The trial court's holding that his disapproval was arbitrary was based on the court's view that the engineer had no right to impose different engineering standards on the developer than those of the board. We have held that the engineer has the right to exercise independent professional judgment without regard to what the board does. Therefore the question is not whether the engineer demanded more than the board but whether a reasonable engineer could refuse approval of the road plan in the circumstances of this case.

■ Hales is a graduate civil engineer, licensed as a professional engineer and land surveyor, with twenty-six years' experience as a county engineer. He met with plaintiff's representatives before they submitted their preliminary subdivision plans for board approval. He told them of his concern that the proposed road would not be safe and could not be maintained. He also noted the deviations from ordinance requirements of pavement width and depth. Despite his objections, the board granted variances for pavement width and depth

and, by a divided vote, approved the road plan.

At trial, Hales testified that sharp radius curves on the road made visibility difficult and created a danger that climbing vehicles would cross the center line and descending vehicles would lose control and roll down the steep foreslope. He believed the narrowness and grade accentuated the hazard. He expressed concern about erosion which would undermine the pavement and deposit mud on it. His maintenance objections were based on problems of snow removal. The road was a constant grade, and he said it would be difficult to travel up or down the road from a stopped position without losing the equipment at one of the curves. If the county accepted the road, he said, it would have to place numerous signs and approximately 1600 feet of guard rails on it, and he estimated the cost of the guard rails at $30,000.

In sum, he did not believe the road could be made acceptable from an engineering standpoint because of safety and maintenance problems. He insisted he had consistently urged the same objections whenever his views had been sought.

Defendants also offered the testimony of the Shelby county engineer, who said he shared Hales' concerns about safety and maintenance of the road.

A consulting engineer employed by plaintiff testified that the road design was dictated by topographical and economic factors. He said guard rails would not be necessary if vehicles traveling down the road did not go more than fifteen miles per hour. In his opinion the road could be made safe with the posting of a few signs. He believed erosion problems had been brought under control. He did not think maintenance would be a problem.

From our de novo review of the record we are unable to say Hales was arbitrary in refusing to approve the road plan. Upon his approval, the public would be responsible for safety and maintenance. A reasonable engineer could decide under the facts in this case the public should not be exposed to those burdens. Hales' decision is not made arbitrary merely because a reasonable engineer might also reach an opposite conclusion, assuming that is possible.

 Contrary to plaintiff's contention, this does not mean a county engineer has authority to prevent development of a rural subdivision. Instead, it means an engineer has power, through reasonable exercise of his professional judgment, to prevent a subdivision road from becoming part of the secondary road system for which the county is responsible. Without his approval, the road must retain its character as a private road for which the developer is responsible.

We hold that Hales did not exceed his statutory authority or abuse his discretion in refusing to approve plaintiff's road plan.

REVERSED.