# IN THE COURT OF APPEALS OF IOWA

No. 21-0964
Filed July 20, 2022

**HARRY L. PETTIT,**
        Plaintiff-Appellant,

**vs.**

**MADISON COUNTY, IOWA, DIANE FITCH, AARON PRICE, and PHIL CLIFTON, in their Official Capacities and MATT SCHULTZ, Madison County Attorney, in his Official Capacity,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Madison County, Coleman McAllister, Judge.

        A landowner appeals from the denial of his petition for writ of mandamus. **AFFIRMED.**

        Fred L. Dorr of Wasker, Dorr, Wimmer & Marcouiller, P.C., West Des Moines, for appellant.

        Hugh J. Cain, Brent L. Hinders, and Daniel J. Johnston of Hopkins & Huebner, P.C., Des Moines, for appellees.

        Heard by May, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Harry Pettit appeals from a district court decision denying his petition for writ of mandamus against Madison County and certain county employees in their official capacities. Pettit contends several errors at law require reversal of the district court's decision. Because our review reveals none, we affirm denial of the writ.

## I. *Background Facts and Proceedings.*

On September 27, 2019, Pettit filed a petition for writ of mandamus and writ of certiorari against Madison County, Iowa; Diane Fitch, Aaron Price, and Phil Clifton, in their official capacities as Madison County Supervisors; and Matt Schultz, in his official capacity as Madison County Attorney. Upon the defendants' motion, the court granted summary judgment with respect to all defendants in the certiorari action and with respect to Attorney Schultz in the mandamus action, but it denied the motion with respect to the balance of the mandamus action. The surviving petition proceeded to a bench trial in April 2021.

Pettit's petition sought to compel the performance of duties under chapter 317 of Iowa Code (2019) regarding the control and eradication of noxious weeds. He claims that certain noxious weed seeds have been allowed to drift onto his property for years from land owned by his neighbor, Mike Taylor. Pettit made a variety of complaints in 2018 and 2019 regarding the weed seed spread, including to the Madison County Board of Supervisors (Board), the sheriff's office, and the county attorney. In 2018, then-Madison County Weed Commissioner Elton Root sent Taylor a written, outdated notice of violation regarding substantial failure to comply with the county's noxious weed resolution. He also notified the Natural

Resources Conservation Service and Farm Service Agency and noted those agencies would send their own notice, but he took no further enforcement action.

After Commissioner Root retired in the latter part of 2018, there was a gap in the county weed commissioner position until Art Smith was hired in June 2019. Commissioner Smith visited Taylor's property in response to Pettit's complaint in July 2019. He then sent Taylor a written, outdated notice of violation, which was returned as undeliverable. Later in July, Commissioner Smith talked with Taylor concerning the weed problem. On July 31, he walked the property line with Taylor and observed that Taylor had cut and sprayed weeds. On August 5, Commissioner Smith met again with Taylor and could not see any thistles along the fence line. He reexamined the property on August 7 when he observed the fence line and proceeded about a quarter mile into Taylor's property, exiting the vehicle occasionally to inspect the land. Commissioner Smith visited Taylor's property in 2019 on at least six occasions, as evidenced by his written notes.

While Commissioner Smith believed the weed problem was resolved after his last visit in 2019, new complaints surfaced from Pettit in 2020. Again, Commissioner Smith spoke with Taylor, sent Taylor a written notice of violation, and subsequently observed mowing and spraying work completed on Taylor's property. Commissioner Smith again believed the weed problem was resolved. County Supervisor Diane Fitch personally visited Taylor's 262-acre property in July 2020 to evaluate the weed problem. She observed and removed two thistles on "the predominate ground, the 200 acres." She also discovered thistles about three-quarters of a mile into the property in a low-lying, wetlands area. Fitch asked

Taylor's hired help to remove the thistles, and Taylor confirmed this work was done when she followed up with him.

Prior to trial, Commissioner Smith submitted his resignation effective May 1, 2021. During his tenure, he never passed the state weed commissioner exam. He was also never certified as a pesticide applicator in Iowa. Commissioner Smith copied at least some portions of the annual weed commissioner report from his predecessor and submitted it to the Board in October 2019. The report indicated the Board's annual weed resolution was timely published, but it was actually not published until May 2020.

After the bench trial and subsequent written briefing on the defendants' motion for directed verdict, the court issued an order denying Pettit's petition for a writ of mandamus in June 2021. Pettit filed a timely notice of appeal.

## II. Review.

Because of the discretion involved, we review the district court's decision whether to issue a writ of mandamus for error of law or abuse of discretion. *See Bellon v. Monroe Cnty.*, 577 N.W.2d 877, 878–79 (Iowa Ct. App. 1998). However, we review the record de novo because mandamus actions are tried in equity. *See id.* We give weight to the district court's factual findings and credibility determinations, though they do not bind us. Iowa R. App. P. 6.904(3)(g). To the extent that the meanings of provisions contained in chapter 317 are at issue, we review questions of statutory interpretation for correction of errors at law. *State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 470 (Iowa 2017).

As for the district court's ruling on the defendants' motion for summary judgment, we review such orders for correction of errors at law. *Wermerskirchen*

*v. Canadian Nat'l R.R.*, 955 N.W.2d 822, 827 (Iowa 2021). With respect to the exclusion of a certain exhibit submitted by the petitioner, we review evidentiary rulings for an abuse of discretion. *Kindig v. Newman*, 966 N.W.2d 310, 317 (Iowa Ct. App. 2021). An abuse of discretion exists when the court exercises its discretion on grounds or for reasons "clearly untenable or clearly unreasonable." *Id.* Moreover, "we review challenges to hearsay and other evidence implicating the interpretation of a rule of evidence for correction of errors at law." *Hawkins v. Grinnell Reg'l Med. Ctr.*, 929 N.W.2d 261, 265 (Iowa 2019).

### III. Discussion.

#### A. Writ of Mandamus.

Pettit argues the district court's refusal to issue a writ of mandamus effectively invalidates chapter 317 of the Iowa Code. He contends this decision excuses the Board from its legislative directives under chapter 317, conflates the Board's mandatory duties with discretionary latitude, and ignores the Board's arbitrary approach to weed control. While we recognize and do not condone the shortcomings exposed by this case, we find no error at law or abuse of discretion in the district court's decision.

We agree with the district court with respect to the discretion inherent in a legislative directive to "enforce" the provisions of chapter 317. *See* Iowa Code § 317.9 ("The responsibility for the enforcement of the provisions of this chapter shall be vested in the board of supervisors . . . ."); *see also id.* § 331.362(6) ("The board [of county supervisors] shall provide for the control of noxious weeds in accordance with chapter 317."). The broad power to enforce a chapter cannot be said to constitute a ministerial act. *See Headid v. Rodman*, 179 N.W.2d 767, 769

(Iowa 1970) (describing a ministerial act as one "to be performed upon a given state of facts, in a prescribed manner . . . [which] does not require the person or board . . . to exercise his or its own judgment"). Because chapter 317 does not prescribe ministerial acts of enforcement, the court's inquiry is limited to whether the Board acted arbitrarily or capriciously in how it chose to enforce the provisions therein. *See Charles Gabus Ford, Inc. v. Iowa State Highway Comm'n*, 224 N.W.2d 639, 644 (Iowa 1974) (providing that when "the duty was subject to the exercise of discretion on the part of the defendant, . . . mandamus will lie only if it is shown [the] defendant acted arbitrarily or capriciously . . . ."). "The terms 'arbitrary' and 'capricious'. . . are practically synonymous and mean that the action complained of was without regard to established rules or standards . . . or without consideration of the facts of the case." *Mathis v. State Conservation Comm'n*, 369 N.W.2d 435, 437 (Iowa 1985) (citation omitted).

Chapter 317 provides the Board with the authority to enter land to destroy weeds, but it does not outright require this action. *See* Iowa Code § 317.6. In fact, the legislative history of chapter 317 conveys this permissive authority is intentional. In 1985, the Iowa legislature changed the language of section 317.16 such that, in the event of a landowner's substantial failure to comply with any order for destruction of weeds, the weed commissioner or deputies "may" rather than "shall" enter upon the land to destroy noxious weeds. 1985 Iowa Acts ch. 325. Moreover, a county weed commissioner is subject to the "direction and control" of the Board, but chapter 317 does not call for affirmative acts of direction and control

beyond fixing the compensation and time of the commissioner's work.[1]  *See* Iowa Code §§ 317.3, .4.

Here, the Board endeavored to employ a county weed commissioner at all times[2] and passed an annual resolution ordering the destruction of noxious weeds.[3]  Commissioner Smith sent notices of violation, visited the Taylor property, and observed satisfactory improvement.  While the notices of violation sent to Taylor were outdated forms, this oversight evidently did not deter Taylor from responding to the issue.  Commissioner Smith was not strictly obligated to enter Taylor's land and destroy the weeds himself after five days of noncompliance with the notice.  Rather, he chose to work with Taylor over an extended period of time to address the issue.  Supervisor Fitch also visited the Taylor property in 2020 and observed what was apparently minor and acceptable weed presence on the main, 200-acre portion of the property, in addition to weed issues in a wetland area.  Supervisor Fitch followed up with Taylor regarding the wetland-area weeds and was satisfied with the response.

---

[1] Chapter 317 also tasks the weed commissioner with submitting an annual report to the Board and passing certain minimum standards for weed identification and methods of control and elimination.  Iowa Code §§ 317.3, .7.  While Commissioner Smith submitted a noncompliant report in 2019 and failed to pass the minimum standards, mandamus will not remedy these issues, as he had submitted his resignation by the time of trial.  *See Headid*, 179 N.W.2d at 770 (observing "the writ [of mandamus] will not be granted where it would serve no useful purpose").

[2] There was a gap in the position for several months until Commissioner Smith was appointed in June 2019.  While Iowa Code section 317.3 indicates that appointment will be effective March 1, the Board explained that it was a difficult position to fill, as it posted the position several times and four applicants turned down the position.

[3] While the Board's 2019 resolution was not published until 2020, no party contends Taylor's stance on weed control arose from the lack of publication.  Nor did the failure to timely publish prevent Commissioner Smith from finding Taylor was in violation and sending notice thereof.

In light of the discretion afforded to the Board in enforcing chapter 317 and the record of events before us, we find the district court did not invalidate this portion of Iowa Code or misapply the distinction between county officials' duties and discretionary responsibilities. Nor did the district court abuse its discretion in finding the Board did not act arbitrarily. Even setting aside the issue of discretion afforded to the Board, we find the availability of a private nuisance action does not support issuing a writ of mandamus in this case. *See Charles Gabus Ford*, 224 N.W.2d at 644 (listing as an essential prerequisite to a writ of mandamus, "absence of any other adequate remedy in the ordinary course of the law"). Accordingly, we affirm the denial of the petition for writ of mandamus on these grounds.[4]

*B. Summary Judgment.*

Pettit argues the district court erred by granting Attorney Schultz's motion for summary judgment and thereby dismissing him from Pettit's petition for writ of mandamus. Pettit maintains the district court erred in its interpretation of Iowa Code section 317.23 because the meaning of "enforce" should not be limited to criminal prosecution. Section 317.23 instructs the county attorney, upon complaint of any citizen, to "enforce the performance" of any officer charged with enforcement of chapter 317 who has neglected or failed to perform such enforcement duties. As the district court explained, this section must necessarily be read in conjunction with the following section 317.24, which provides, "Any officer referred to in this chapter who neglects or fails to perform the duties incumbent upon the officer under the provisions of this chapter shall be guilty of a

---

[4] Because we reach this conclusion, we decline to address Pettit's arguments regarding the award of damages in mandamus actions.

simple misdemeanor." Therefore, the enforcement mechanism available to the county attorney would be criminal prosecution.[5]

However, the Iowa Supreme Court has noted:

[a] prosecutor is not subject to judicial supervision in determining what charges to bring and how to draft accusatory pleadings, but is protected from judicial oversight by the doctrine of separation of powers. Thus, mandamus will not lie to compel a prosecuting attorney to institute a criminal prosecution, since the acts of a prosecuting attorney are not purely ministerial acts, but involve, in large measure, learning and the exercise of discretion.

*State v. Iowa Dist. Court*, 568 N.W.2d 505, 508 (Iowa 1997) (quoting 63C Am. Jur. 2d Prosecuting Attorneys § 21 (1997)). Accordingly, the district court properly found it could not grant mandamus with respect to the county attorney even if Pettit could prove the defendants neglected or failed to perform their duties under chapter 317. We therefore affirm the district court's grant of summary judgment in this respect.

*C. Exclusion of Exhibit 41.*

Pettit argues the district court improperly excluded his Exhibit 41 from evidence. Exhibit 41 consisted of the Farm Service Agency's response to a Freedom of Information Act (FOIA) request submitted by Pettit regarding "any and all requests to spot spray or spot mow CRP [Conservation Reserve Program]

---

[5] The district court noted a county attorney also has authority to bring a petition for removal from office against an elected official, but Pettit's petition did not appear to seek this relief. Since Pettit likewise does not raise this ground on appeal, we continue to operate with this understanding. Moreover, we find no abuse of discretion in the district court's further observation that it would decline to issue a writ of mandamus even if prosecutorial action for removal from office was part of the relief sought. *See Headid,* 179 N.W.2d at 770–71 (acknowledging a court has the discretion to deny the right even when "the petitioner has a clear legal right for which mandamus is a proper remedy").

ground" on the Taylor property. The FOIA response indicated no such requests. Pettit and Taylor's properties are both entirely enrolled in the federal CRP.

At trial, defendants objected to admission of Exhibit 41 on relevance and hearsay grounds. The district court accepted the exhibit and delayed ruling on its admission until its written decision, where it summarily acknowledged sustaining the objection and declining to give the exhibit evidentiary consideration. Defendants now assert Pettit has failed to preserve error on this issue because the exclusion of Exhibit 41 does not affect a substantial right of Pettit. *See* Iowa R. Evid. 5.103(a)(2) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . ."). In this context, we consider whether the error is harmless and ask, "Does it sufficiently appear that the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice?" *State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006).

Here, we find the exclusion of Exhibit 41 did not injuriously affect Pettit because we find no legal error in the exclusion. Evidence is relevant when it tends to make a material fact more or less probable, and irrelevant evidence is not admissible. Iowa R. Evid. 5.401–02. Pettit argues that because Taylor was spot spraying and mowing without proper CRP approval, the Board should not have accepted Taylor's weed removal methods as an appropriate way to handle the weed complaint. This argument undermines Pettit's argument for mandamus because he acknowledges Taylor was responsive to the weed complaint. The record does not indicate the Board instructed Taylor to destroy the weeds in any particular manner, and the manner of destruction is not a material fact in

determining whether the Board enforced chapter 317's mandate that landowners destroy noxious weeds. Because the potential violation of CRP requirements is not relevant to the relief sought in Pettit's mandamus action, we find no reversible error in the exclusion of Exhibit 41.

### IV. Disposition.

We find no error of law in the district court's decision to deny the petition for writ of mandamus, grant summary judgment with respect to the county attorney, or exclude the agency letter from evidence. Therefore, we affirm the district court's ruling in each of these respects.

**AFFIRMED.**